Darrell E. EMERSON, Plaintiff,

v.

The CITY OF NEW YORK, et al., Defendants.

No. 09 Civ. 1656 (VM).

United States District Court, S.D. New York.

July 19, 2010.

**DECISION AND ORDER**

VICTOR MARRERO, District Judge.

Plaintiff Darrell E. Emerson ("Emerson") brings this action under 42 U.S.C. § 1983 ("§ 1983") against the City of New York (the "City"), and the following City employees, agencies, and departments: Administration for Children Services ("ACS"), New York Police Department ("NYPD") Firearms Division, NYPD 46th Precinct, NYPD Officer Adrian Ramos, NYPD Sergeant Kevin Hoare ("Hoare"), NYPD Officer Stacy Black ("Black"), NYPD Officer James Rivera ("J.Rivera"), and NYPD Lieutenant John Eagan ("Eagan"), Arlynne Lowell ("Lowell"), Thomas Prasso ("Prasso"), Anastasia Rivera ("A. Rivera"), Linda Williams McCarthy ("McCarthy"), Leslie Smith ("Smith"), ACS Commissioner Don Mattingly ("Mattingly"), Wanda Chambers ("Chambers"), and Herta Olivia–Taylor ("Taylor") (collectively, the "City Defendants"). Emerson also brings this action against Astor Child Guidance Center and its employees Keisha Senior and Marylin Gramas (collectively, "ACG"), Family Support Unlimited Inc. ("FSUI"), Christina Olamijy ("Olamijy"), Denny Garcia ("Garcia"), Jane Doe, and Renee D. Mosher ("Mosher").

Emerson, acting pro se, alleges violations of the Second, Fourth, and Fourteenth Amendments of the Constitution in connection with child protective proceedings that resulted in the removal of his child, the confiscation of certain firearms, and the revocation of his firearms licenses. Emerson seeks compensatory relief and an unspecified amount of punitive damages for these alleged violations. City Defendants and ACG now move to dismiss this action pursuant to Federal Rules of Civil Procedure Rule 12(b)(5) ("Rule 12(b)(5)") and Rule 12(b)(6) ("Rule 12(b)(6)"). For

Darrell E. Emerson, Bronx, NY, pro se.

John Michael Buhta, NYC Law Department, Gino Anthony Zonghetti, Kenny, Stearns & Zonghetti, New York, NY, for Defendants.

the reasons discussed below, City Defendants' and ACG's motions to dismiss are GRANTED with respect to Rule 12(b)(6), and the Court dismisses the claims against FSUI, Olamijy, Garcia, and Mosher without prejudice pursuant to Rule 4(m) of the Federal Rules of Civil Procedure ("Rule 4(m)").

## I. *BACKGROUND* [1]

### A. *PROCEDURAL HISTORY*

Emerson originally filed a complaint in this action on November 3, 2008. By Order dated February 23, 2009 (the "February 2009 Order"), the Honorable Leonard B. Sand dismissed Emerson's original complaint, sua sponte, on various procedural and substantive grounds, and granted Emerson leave to file an amended complaint within sixty days. On April 23, 2009, Emerson filed an amended complaint (the "Amended Complaint") followed by a second amended complaint on March 10, 2010 (the "Second Amended Complaint").[2]

### B. *FACTUAL BACKGROUND*

On the morning of August 17, 2006, Mosher, the mother of Emerson's child, and Smith, an ACG Supervisor, reported an allegation of sexual abuse committed by Emerson against his minor child. In response to this allegation, officers from the NYPD 46th Precinct responded to Emerson's apartment and conducted a preliminary investigation. Officer Ramos brought Emerson's daughter to St. Barnabas Hospital (the "Hospital") for evaluation. While at Emerson's apartment, Hoare found Emerson's pistol underneath the mattress of his bed, and, with Eagan's authorization, confiscated the pistol and Emerson's other legally-licensed firearms, ammunition, and related documents.

Emerson asserts that on August 18, 2006, Eagan filed a "fabricated report of [a] loaded gun accessible to a child," (Amended Complaint App. 4) (quotation marks omitted), and J. Rivera and Black, as well as ACS caseworker Taylor, initiated emergency removal of Emerson's daughter from the Hospital. Subsequently, on August 21, 2006, Smith and McCarthy filed a neglect petition in Family Court of the State of New York, Bronx County (the "Bronx Family Court"). By Order dated August 21, 2006, the Bronx Family Court directed the temporary removal of Emerson's child because of the court's finding of an imminent risk to the child.

Thereafter, according to Emerson, on February 9, 2007 ACG, a non-profit organization that provides children's mental health services, acting in concert with Olamijy and FSUI, a non-profit organization that serves families in the Bronx, fabricated allegations that Emerson sexually abused his minor child by rape when the child was in his care. Emerson further alleges that on April 19, 2007, McCarthy, Smith, and A. Rivera filed a fabricated

---

**1.** The facts below are taken from the Complaint and the documents attached to it or incorporated by reference. The Court accepts these facts as true for the purposes of ruling on a motion to dismiss. *See Spool v. World Child Int'l Adoption Agency,* 520 F.3d 178, 180 (2d Cir.2008). Unless specifically referenced, no further citation to these sources will be made.

**2.** By Order dated February 23, 2010 ("February 2010 Order") Magistrate Judge Frank Maas granted Emerson leave to further amend his complaint. It appears from Emerson's pleadings that the document titled Second Amended Complaint supplements, rather than supersedes, his Amended Complaint. Given the Court's liberal interpretation of pro se pleadings, for the purposes of this motion to dismiss, the Court will construe both the Amended Complaint and Second Amended Complaint as the operative complaint (the "Complaint") in this action.

neglect and abuse petition against him based on an additional incident of sexual abuse reported on December 26, 2006 (the "April 2007 Petition"). Although the Bronx Family Court dismissed the April 2007 Petition, Emerson claims he has not seen his child since February 2007.

Following the confiscation of Emerson's pistol, on September 4, 2006, the NYPD Firearms Division suspended Emerson's pistol license and rifle/shotgun permit. On February 8, 2007, Emerson was arrested for possessing two gravity knives and charged with violating N.Y. Penal Law § 265.01, criminal possession of a weapon in the fourth degree. Emerson did not notify the NYPD License Division of this arrest. Subsequently, on May 4, 2007, the NYPD License Division revoked his firearms license and permit based upon the facts and circumstances surrounding the incident on August 17, 2006, and his failure to abide by the rules and regulations governing his firearms. Based on the recommendation of Lowell, an NYPD License Division hearings officer, on May 27, 2008, Prasso, Director of the NYPD License Division, made a final determination to revoke Emerson's pistol license and rifle/shotgun permit.

## C. EMERSON'S CLAIMS

Construing the Complaint in the light most favorable to Emerson, he appears to bring § 1983 claims against certain City Defendants—ACS, Black, J. Rivera, Ramos, Smith, and Taylor—alleging that they violated his constitutional right to due pro-

cess when they executed emergency removal of his child from the Hospital. Emerson also appears to allege that the NYPD Firearms Division, the NYPD 46th Precinct, and certain officers from the NYPD 46th Precinct—Black, J. Rivera, Ramos, Hoare, and Eagan (the "46th Precinct Officers")—deprived him of personal property, namely, his firearms, in violation of his Second, Fourth, and Fourteenth Amendment rights. Emerson also brings § 1983 claims against Prasso, Lowell, and the NYPD Firearms Division, alleging that the revocation of his firearms licenses violated his Fourteenth Amendment right to due process. Furthermore, Emerson alleges malicious prosecution claims against McCarthy, Smith, and A. Rivera for filing the April 2007 Petition against him in Bronx Family Court.

In addition, Emerson appears to allege the common law tort of intentional infliction of emotional distress ("IIED") against ACG, alleging that ACG fabricated abuse allegations that Emerson raped his minor child. Finally, Emerson alleges IIED claims against Hoare and Eagan arising out of the removal of his child and firearms on August 17, 2006.[3]

## II. *DISCUSSION*

### A. *LEGAL STANDARD*

A court considering a motion to dismiss under Rule 12(b)(6) accepts the plaintiff's allegations of fact set forth in the complaint as true and draws all reasonable inferences in the plaintiff's favor.[4] *See*

---

**3.** Emerson does not appear to allege any cognizable claims against Chambers, Mattingly, FSUI, Olamijy, Garcia, or Mosher, although he names them as defendants in the Complaint.

**4.** The Court notes that in his opposition to City Defendants' and ACG's motions to dismiss, Emerson introduces twelve additional

causes of action. A motion to dismiss pursuant to 12(b)(6) generally requires the Court to review only the pleadings to determine whether they state a claim upon which relief can be granted. *See* Fed.R.Civ.P. 12(b). As a result, for the purposes of deciding the instant motions, the Court has not considered any additional causes of actions not contained in the Complaint.

*Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.,* 517 F.3d 104, 115 (2d Cir.2008) (citation and internal quotation marks omitted). To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* —— U.S. ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) *(quoting Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). This standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A court should not dismiss a complaint for failure to state a claim if the factual allegations sufficiently "raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955. In ruling on a motion to dismiss, the task of the Court is to "assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *In re Initial Pub. Offering Sec. Litig.,* 383 F.Supp.2d 566, 574 (S.D.N.Y.2005) (internal quotation marks and citation omitted).

When considering a motion to dismiss a pro se complaint, "courts must construe [the complaint] broadly, and interpret [it] to raise the strongest arguments that [it] suggests." *Weixel v. Board of Educ.,* 287 F.3d 138, 146 (2d Cir.2002) (citation and internal quotation marks omitted). This guidance applies with particular force when the plaintiff's civil rights are at issue. *See McEachin v. McGuinnis,* 357 F.3d 197, 200 (2d Cir.2004); *Flaherty v. Lang,* 199 F.3d 607, 612 (2d Cir.1999). However, even pro se plaintiffs asserting civil rights claims are not exempt from *Twombly*'s requirement that the pleadings contain factual allegations sufficient to raise a "right to relief above the speculative level." *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955.

## B. GOVERNMENTAL IMMUNITY

To state a claim under § 1983, Emerson must show that, while acting under color of state law, City Defendants deprived him of his federal constitutional or statutory rights. *See Pabon v. Wright,* 459 F.3d 241, 249 (2d Cir.2006). Construing the Complaint in the light most favorable to Emerson, he appears to assert the following constitutional claims: (1) that removal of his child violated his constitutional right to due process under the Fourteenth Amendment; (2) that he was deprived of personal property, namely, his firearms, in violation of his due process rights under the Fourteenth Amendment; (3) that Hoare and Eagan violated his Second Amendment right to bear arms; and (4) that the 46th Precinct Officers violated his right to be free from unreasonable searches and seizures under the Fourth Amendment.

The doctrine of qualified immunity shields government officials performing discretionary functions from liability for civil damages under federal claims insofar as their conduct does not violate clearly-established statutory or constitutional rights of which a reasonable person would have known. *See Wilson v. Layne,* 526 U.S. 603, 609, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999); *Ayers v. Ryan,* 152 F.3d 77, 82 (2d Cir.1998). Qualified immunity should be decided at the earliest possible opportunity in order to relieve public officials of the burden of participating in a lawsuit. *See Pearson v. Callahan,* 555 U.S. 223, 129 S.Ct. 808, 815, 172 L.Ed.2d 565 (2009). Government officials are entitled to qualified immunity "when they perform discretionary functions if either (1) their conduct did not violate clearly-established rights of which a reasonable person would have known, or (2) it was objectively reasonable to believe that [their] acts did not violate

these clearly established rights." *Tenenbaum*, 193 F.3d at 596 (citation omitted); *see also Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). A government official's actions are objectively unreasonable only "when no officer of reasonable competence could have made the same choice in similar circumstances." *Lennon v. Miller*, 66 F.3d 416, 420–21 (2d Cir.1995).

### 1. *Claims Relating to the Removal of Emerson's Child*

City Defendants move to dismiss Emerson's constitutional claims stemming from the removal of his child on the grounds that City Defendants Black, J. Rivera, Ramos, Smith, and Taylor are entitled to qualified immunity.[5]

#### a. *Claims Against Caseworkers*

 Parents have a liberty interest, protected by the Fourteenth Amendment, in the "care, custody and management of their children." *Tenenbaum v. Williams*, 193 F.3d 581, 593 (2d Cir.1999). The interests of parents, however, are counterbalanced by a "compelling governmental interest in the protection of minor children, particularly in circumstances where the protection is considered necessary as against the parents themselves." *Wilkinson ex rel. Wilkinson v. Russell*, 182 F.3d 89, 104 (2d Cir.1999) (internal quotations omitted). In cases of suspected child abuse, therefore, caseworkers are often faced with the choice of interrupting parental custody and possibly being accused

of infringing a parent's constitutional rights, or not removing a child and possibly infringing the child's rights. *See Kia P. v. McIntyre*, 235 F.3d 749, 758 (2d Cir.2000).

 To balance these concerns, courts give caseworkers "unusual deference" and impose few concrete restrictions on their exercise of discretion. *See Wilkinson*, 182 F.3d at 104. Consequently, for an investigation to pass constitutional muster, a caseworker need only have a "reasonable basis for their finding of abuse ... consistent with some significant portion of the evidence before them." *Id.* at 104–08 (quotation marks omitted). Thus, to prevail on a constitutional claim against a caseworker, a plaintiff must demonstrate that the caseworker's actions were "shocking, arbitrary, and egregious." *See Shapiro v. Kronfeld*, No. 00 Civ. 6286, 2004 WL 2698889, at *16 (S.D.N.Y. Nov. 24, 2004) (quoting *Anthony v. City of New York*, 339 F.3d 129, 143 (2d Cir.2003)).

 Emerson alleges that, on August 17, 2006, certain City Defendants improperly removed his child in response to a report of sexual abuse perpetrated by him on his own child. Emerson asserts that City Defendants knowingly violated the law and manufactured false evidence to obtain a wrongful conviction. Even taking Emerson's factual allegations to be true, the Court still finds that Emerson has failed to plead sufficient facts to plausibly suggest that the actions of individual City Defendants Black, J. Rivera, Ramos,

---

**5.** City Defendants also move to dismiss any claims against Mattingly and Chambers under Rule 12(b)(6), asserting that the Complaint fails to state a claim that is plausible on its face. Emerson alleges due process violations in connection with the removal of his child against Mattingly and Chambers. However, in the Complaint, Emerson merely asserts that Chambers responded to his complaints to

ACS and that Mattingly did not acknowledge or respond to such complaints. These claims fail to allege facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949. As such, the Court dismisses Emerson's claims against Mattingly and Chambers under Rule 12(b)(6).

Smith, and Taylor were "shocking, arbitrary, and egregious" under *Anthony*. *Id.* Emerson thus does not allege facts that plausibly suggest that Black, J. Rivera, Ramos, Smith, and Taylor violated his clearly established Fourteenth Amendment rights. As a result, the Court dismisses Emerson's constitutional claims against Black, J. Rivera, Ramos, Smith, and Taylor stemming from the removal of his child. *See Iqbal*, 129 S.Ct. at 1949.

### b. *Malicious Prosecution Claims*

Viewing the Complaint in the light most favorable to Emerson, the Court construes the claims against A. Rivera, Smith, and McCarthy to be malicious prosecution claims arising under the Fourth Amendment. As discussed in *Albright v. Oliver*, 510 U.S. 266, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994), the Supreme Court, in a plurality opinion, determined that only violations of the Fourth Amendment could support § 1983 claims for malicious prosecution. *Id.* at 274–75, 114 S.Ct. 807. In *Singer v. Fulton County Sheriff*, the Court of Appeals for the Second Circuit observed that "the Fourth Amendment right implicated in a malicious prosecution action is the right to be free of unreasonable seizure of the person—i.e., the right to be free of unreasonable or unwarranted restraints on personal liberty." 63 F.3d 110, 116 (2d Cir.1995). "Considered in tandem, *Singer* and *Albright* stand for the proposition that to sustain a § 1983 malicious prosecution claim, there must be a seizure or other 'perversion of proper legal procedures' implicating the claimant's personal liberty and privacy interests under the Fourth Amendment." *Washington v. County of Rockland*, 373 F.3d 310, 316 (2d Cir.2004) (*quoting Singer*, 63 F.3d at 117).

■ Here, Emerson asserts § 1983 claims against A. Rivera, Smith, and McCarthy, claiming that they fabricated abuse allegations by bringing neglect and abuse proceedings against him in Bronx Family Court, which caused him serious and sustained emotional trauma, weight loss, and high blood pressure. Emerson, however, has not alleged sufficient facts to plausibly state a violation of his clearly established right to be free from malicious prosecution under the Fourth Amendment. The Complaint does not allege any facts that plausibly support a claim that A. Rivera, Smith, and McCarthy seized Emerson within the traditional meaning of the Fourth Amendment since he was neither arrested nor otherwise detained in connection with the neglect and abuse proceedings in Bronx Family Court. *See Rolon v. Henneman*, 517 F.3d 140, 144 (2d Cir. 2008) (finding that because the plaintiff was not arrested or otherwise detained, his Fourth Amendment rights were not implicated and he thus failed to state a claim for malicious prosecution under § 1983).

■ The Court further notes that even if Emerson could state a valid claim of malicious prosecution against A. Rivera, Smith, and McCarthy, his claim would still be barred by the doctrine of absolute immunity. It is well settled that a state prosecutor, and agency officials performing functions analogous to those of a prosecutor, have absolute immunity from liability in a § 1983 action for damages arising out of their conduct "in initiating a prosecution and in presenting the State's case." *Imbler v. Pachtman*, 424 U.S. 409, 431, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976); *see also Butz v. Economou*, 438 U.S. 478, 514, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978). The Second Circuit has specifically found that attorneys who pursue protective child litigation may be afforded absolute immunity as quasi-prosecutors. *See Walden v. Wishengrad*, 745 F.2d 149, 152 (2d Cir. 1984). Here, to the extent that Emerson brings suit against A. Rivera, Smith, and

McCarthy for prosecuting neglect and abuse proceedings against him in Bronx Family Court, the Court finds that these defendants were acting in performance of their duties as quasi-prosecutors and are therefore entitled to absolute immunity from suit. Accordingly, the Court dismisses the claims against A. Rivera, Smith, and McCarthy.

## 2. Removal of Emerson's Firearms

The Complaint asserts constitutional violations under the Second, Fourth, and Fourteenth Amendment arising out of the removal of Emerson's firearms. As described above, Emerson alleges that the 46th Precinct Officers deprived him of his firearms and firearm license without due process of law; violated his Second Amendment right to bear arms by removing his firearms; and violated his Fourth Amendment right to be free from unreasonable searches and seizures when they entered and removed his firearms.[6]

### a. Due Process Clause

■ Emerson appears to allege that the 46th Precinct Officers and NYPD Firearms Division deprived him of his firearms and firearm license without due process of law.[7] The Due Process Clause of the Fourteenth Amendment is not violated when an individual is deprived of property

as the result of an unauthorized act of a state employee, as opposed to an established state procedure, provided that the state makes available a meaningful post-deprivation remedy. *See Hudson v. Palmer*, 468 U.S. 517, 531, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984); *Marino v. Ameruso*, 837 F.2d 45, 47 (2d Cir.1988).

■ Emerson attaches to the Complaint the NYPD Firearms Division Head's Final Determination, dated May 27, 2008, affirming the revocation of his pistol license and rifle/shotgun permit. It is clear from this document that Emerson sought, and was afforded, an Article 78 administrative hearing to appeal the revocation of his firearms licenses and secure the return of his firearms. Since Emerson fails to allege facts that plausibly suggest that the 46th Precinct Officers deprived him of his firearms without due process, the 46th Precinct Officers are entitled to qualified immunity.[8] *See Tenenbaum*, 193 F.3d at 596 (citation omitted).

Although Emerson argues that the instant action should not be dismissed because the Complaint seeks money damages, a remedy unavailable under Article 78, the Court is not persuaded. The Second Circuit has found that an Article 78 proceeding is an adequate post-deprivation remedy even though the relief available

---

**6.** Emerson appears to assert a claim that the 46th Precinct Officers violated his Fourth Amendment right when they entered his apartment and removed his firearms. Emerson, however, makes no allegations that plausibly suggest that the 46th Precinct Officers conducted an unreasonable search or seizure, and therefore fails to state a Fourth Amendment claim. *See TZ Manor, L.L.C. v. Daines*, No. 08 Civ. 3293, 2009 WL 2242436, at *10 (S.D.N.Y. July 28, 2009). Since his Fourth Amendment claim fails to allege facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged[,]" it is dismissed under Rule 12(b)(6). *Iqbal*, 129 S.Ct. at 1949.

**7.** The Court will address all claims against the NYPD Firearms Division in Section II.C., below.

**8.** New York law also accords Prasso, as Director of the NYPD License Division, and Lowell, as a hearing officer, absolute immunity from any state-law breach of duty claim, because their actions " 'involve[d] the conscious exercise of discretion of a judicial or quasi-judicial nature.' " *Cornejo v. Bell*, 592 F.3d 121, 130–31 (2d Cir.2010) (*quoting Arteaga v. New York*, 72 N.Y.2d 212, 532 N.Y.S.2d 57, 527 N.E.2d 1194, 1196 (1988)).

differs from the relief available under § 1983. *See Hellenic Am. Neighborhood Action Comm. v. The City of New York,* 101 F.3d 877, 881 (2d Cir.1996) (citing *Hudson v. Palmer,* 468 U.S. at 535, 104 S.Ct. 3194). Moreover, Article 78 explicitly provides for damages that are "incidental to the primary relief sought by petitioner" that "he might otherwise recover on the same set of facts in a separate action." N.Y.C.P.L.R. § 7806 (McKinney 2010). Because Emerson availed himself of adequate post-deprivation remedies, the Court dismisses his Fourteenth Amendment claims arising out of the removal of his firearms.

b. *Second Amendment*

To the extent Emerson asserts that Hoare and Eagan violated his Second Amendment right to own a firearm, the Court finds that such claims are also barred by the doctrine of qualified immunity. A court evaluating a claim of qualified immunity "must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all, and if so, proceed to determine whether that right was clearly established at the time of the alleged violation." *Wilson v. Layne,* 526 U.S. 603, 609, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999). If the right is not clearly established at the time of the alleged violation, then government officials performing discretionary functions are entitled to qualified immunity. *See Safford Unified School District v. Redding,* —— U.S. ——, 129 S.Ct. 2633, 2643–44, 174 L.Ed.2d 354 (2009) (finding that individual school officials who strip-searched a student were entitled to qualified immunity because the search's unconstitutionality was not clearly established at the time of the alleged violation).

■ Here, the right of individuals to possess guns for purely civilian purposes under the Second Amendment was not clearly established in August 2006, when Hoare and Eagan confiscated Emerson's firearms. Before the Supreme Court found, in *District of Columbia v. Heller,* that the Second Amendment conferred an individual right to keep and bear arms, *see* 554 U.S. 570, 128 S.Ct. 2783, 2799, 171 L.Ed.2d 637 (2008), courts had routinely interpreted the right to bear arms as a right limited to the possession of weapons for certain military purposes. *See, e.g., United States v. Lippman,* 369 F.3d 1039, 1043–45 (8th Cir.2004); *United States v. Scanio,* No. 97–1584, 1998 WL 802060, at *2 (2d Cir. Nov. 12, 1998) (unpublished opinion). These courts relied on *United States v. Miller,* where the Supreme Court held that the Second Amendment does not protect the right to possess and use guns for purely private, civilian purposes. *See* 307 U.S. 174, 59 S.Ct. 816, 83 L.Ed. 1206 (1939). Indeed, the Supreme Court itself subsequently cited Miller for this proposition. *See Lewis v. United States,* 445 U.S. 55, 65 n. 8, 100 S.Ct. 915, 63 L.Ed.2d 198 (1980) (quoting *Miller,* 307 U.S. at 178, 59 S.Ct. 816) ("the Second Amendment guarantees no right to keep and bear a firearm that does not have 'some reasonable relationship to the preservation or efficiency of a well regulated militia.'"). Since the right of individuals to possess guns for purely civilian purposes was not a clearly established right at the time of the confiscation at issue here, Hoare and Eagan are shielded by the doctrine of qualified immunity.

Accordingly, the Court dismisses Emerson's Second, Fourth, and Fourteenth Amendment claims arising out of the removal of his firearms and the revocation of his firearm permits.[9]

9. As noted in the February 2009 Order dis- missing Emerson's original complaint, to the

## C. *MUNICIPAL LIABILITY*

Emerson brings a § 1983 claim against the City and municipal agencies ACS, the NYPD Firearms Division, and the NYPD 46th Precinct. Upon review of the Complaint, the Court finds that Emerson fails to plead sufficient facts to sustain a § 1983 claim against the City or its municipal agencies.

A § 1983 plaintiff alleging violations of federally-protected rights against a municipality or municipal agency must allege facts demonstrating the existence of an officially-adopted policy or custom that caused that plaintiff injury and a direct and deliberate causal connection between that policy or custom and the violation of that plaintiff's federally protected rights. *See Board of Cnty. Comm'rs of Bryan Cnty., OK v. Brown*, 520 U.S. 397, 403–04, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). To establish municipal liability under § 1983, a plaintiff must do more than simply state that such a municipal policy or custom exists. *See Dwares v. City of N.Y.*, 985 F.2d 94, 100 (2d Cir.1993). Rather, a plaintiff must allege facts tending to support, at least circumstantially, an inference that such a municipal policy or custom exists. *See id.* A "persistent and widespread" practice of government officials could be "so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 168, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). However,

where a persistent practice is alleged to exist only among subordinate employees, the subordinates' actions "must be so manifest as to imply the constructive acquiescence of senior policy-making officials." *Sorlucco v. New York City Police Dep't*, 971 F.2d 864, 871 (2d Cir.1992).

██ In the Complaint, Emerson asserts that subordinate municipal employees violated his constitutional rights. However, Emerson does little more than baldly assert that an abuse of emergency circumstance and subsequent abuse of emergency removal of his child are alleged policy or custom. In the Complaint, Emerson states that the failure to adequately supervise, train, and/or instruct, with deliberate indifference, subordinate staff, directly influenced the alleged violation of his constitutional rights. However, a mere "recitation that there was a failure to train municipal employees does not suffice to allege that a municipal custom or policy caused the plaintiff's injury." *Dwares*, 985 F.2d at 100. Without facts tending to support an inference of an official policy or custom that violated his federally protected rights, Emerson's allegations do not state a plausible § 1983 claim against the City. *See id.*

In addition, a plaintiff is generally prohibited from suing a municipal agency. Instead, the City is generally the proper defendant when a plaintiff seeks to bring an action pursuant to the official acts and/or inaction of an agency of the City. *See Ximines v. George Wingate High Sch.*, 516 F.3d 156, 160 (2d Cir.2008) (per cu-

---

extent that Emerson raises claims arising from the revocation of his firearms licenses in order to have this Court review and invalidate a final state-court determination, such review is not available in the federal district courts. Appellate jurisdiction over state court decisions, even when the challenge to the state court's actions involves federal constitutional issues, lies exclusively in the United States

Supreme Court. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923); *Kropelnicki v. Siegel*, 290 F.3d 118, 128 (2d Cir. 2002).

riam); N.Y. City Charter, Ch. 17 § 396 ("All actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the city of New York and not in that of any agency ...."). As a result, the Court finds that ACS, the NYPD Firearms Division, and the NYPD 46th Precinct, as agencies of the City, are not suable entities and thus dismisses Emerson's claims against them.[10] *See Harrison v. N.Y. City Admin. for Children's Serv.*, No. 02 Civ. 0947, 2003 WL 21640381, at *6 (S.D.N.Y. July 7, 2003) (finding that ACS is not a suable entity); *Flemming v. New York City*, No. 02 Civ. 4113, 2003 WL 296921, at *2 (S.D.N.Y. Feb. 11, 2003) (NYPD 46th Precinct); *East Coast Novelty Co., Inc. v. City of N.Y.*, 781 F.Supp. 999, 1010 (S.D.N.Y.1992) (subdivisions of the NYPD).

## D. *STATE LAW CLAIMS*

Finally, Emerson appears to allege the common law tort of IIED against ACG, Hoare, and Eagan. Where federal claims in an action premised on federal question jurisdiction "are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *Castellano v. Board of Trustees*, 937 F.2d 752, 758 (2d Cir.1991). Accordingly, because the Court has dismissed all of Emerson's federal claims brought under § 1983, it declines to exercise supplemental jurisdiction over any state law claims pleaded in the Complaint.[11] *See* 28 U.S.C. § 1367(c)(3); *see*

also *Nunez v. Goord*, No. 99 Civ. 4640, 2002 WL 1162905, at *2 (S.D.N.Y.2002); *Okunieff v. Rosenberg*, 996 F.Supp. 343, 358 (S.D.N.Y.1998).

## E. *INSUFFICIENT SERVICE OF PROCESS*

On December 10, 2009, Magistrate Judge Frank Maas granted Emerson an extension until January 15, 2010 to effect service of the Complaint on defendants FSUI, Olamijy, Garcia, and Mosher. As noted by Magistrate Judge Maas in his Order dated June 9, 2010 denying Emerson's request for a default judgment, there is no indication that Emerson properly effected service by the January 15, 2010 deadline. Accordingly, the Court dismisses without prejudice all claims against the above four defendants under Rule 4(m).[12]

## F. *LEAVE TO AMEND*

Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend a complaint "shall be freely given when justice so requires." Fed.R.Civ.P. 15(a); *see also Hayden v. County of Nassau*, 180 F.3d 42, 53 (2d Cir.1999) ("When a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint."). However, "a district court has the discretion to deny leave to amend if an amendment would be futile." *Mobile Data Shred, Inc. v. United Bank of Switz.*, No. 99 Civ. 10315, 2000 WL 351516, at *8 (S.D.N.Y.2000). The Court notes that Emerson has already twice been granted leave to amend—once after the February

---

**10.** The Court notes that even if Emerson were to bring § 1983 claims against the City for the alleged unlawful conduct of these agencies, the claims would still be deficient because he does not allege facts supporting an inference that the City or its agencies had a custom or official policy which resulted in his alleged injury. *See Dwares*, 985 F.2d at 100.

**11.** Nothing about the Court's dismissal here precludes Emerson from bringing state law claims in state court.

**12.** The Court notes, however, that unless Emerson is able to assert cognizable federal claims against FSUI, Olamijy, Garcia, and Mosher, Emerson should bring any further claims against these defendants in state court.

2009 Order and again after the February 2010 Order—and the Court is not persuaded that, even if granted further leave, Emerson would be able to cure the Complaint's deficiencies as identified herein. Accordingly, the Court denies leave to further amend the Complaint.

### III. *ORDER*

For the reasons stated above, it is hereby

**ORDERED** that the motions of The City of New York, Administration for Children Services ("ACS"), New York Police Department ("NYPD") Firearms Division, NYPD 46th Precinct, NYPD Sergeant Kevin Hoare, Arlynne Lowell, Thomas Prasso, NYPD Officer Stacy Black, NYPD Officer James Rivera, NYPD Lieutenant John Eagan, Anastasia Rivera, Linda Williams McCarthy, Leslie Smith, ACS Commissioner Don Mattingly, NYPD Officer Adrian Ramos, Wanda Chambers, and Herta Olivia–Taylor (Docket No. 43), and of Astor Child Guidance Center and its employees Keisha Senior and Marylin Gramas (Docket No. 21), to dismiss the Complaint of plaintiff Darrell Emerson ("Emerson") are GRANTED; and it is further

**ORDERED** that Emerson's claims against defendants Family Support Unlimited Inc., Christina Olamijy, Denny Garcia, and Renee D. Mosher are dismissed without prejudice under Rule 4(m) of the Federal Rules of Civil Procedure.

The Clerk of Court is directed to terminate any pending motions and to close this case.

**SO ORDERED.**