*Stollman v. Williams*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

## <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 30th day of September, two thousand twenty-five.

PRESENT:

> JOHN M. WALKER, JR.,
> SUSAN L. CARNEY,
> RICHARD J. SULLIVAN,
> *Circuit Judges*.

_____

SHMUEL STOLLMAN and ELISA STOLLMAN, individually and on behalf of their infant children E.S. and L.S.,

> *Plaintiffs-Appellants*,

v.                                                    No. 23-7610

LAKEASHA WILLIAMS, MIRIAM ORTIZ-DOWNES, GLENN HYMAN, KAI HAYES, CITY

OF NEW YORK, ANNEMARIE FUSCHETTI,
EBONY RUSSELL, CARMELA MONTANILE,
TONYA WHEELOCK, EDWARD O'CONNOR,
KEREN ENNETTE,

*Defendants-Appellees.*[*]

_____

| | |
|---|---|
| **For Plaintiffs-Appellants:** | CAROLYN A. KUBITSCHEK (David J. Lansner, *on the brief*), Lansner & Kubitschek, New York, NY. |
| **For Defendants-Appellees:** | AMY MCCAMPHILL (Richard Dearing, Melanie T. West, *on the brief*), *for* Muriel Goode-Trufant, Corporation Counsel of the City of New York, New York, NY. |

Appeal from a judgment of the United States District Court for the Southern District of New York (John P. Cronan, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the September 27, 2023 judgment of the district court is **AFFIRMED**.[1]

Shmuel Stollman and Elisa Stollman ("Plaintiffs"), the parents of a severely autistic and nonverbal child ("E.S."), appeal from a grant of summary judgment

---

[*] The Clerk of Court is respectfully directed to amend the case caption as set forth above.

[1] Plaintiffs also appeal from the district court's order entered on September 30, 2024 denying their motion to alter the judgment. Because Plaintiffs do not advance any arguments apart from those challenging the grant of summary judgment itself, we consider any separate challenge to that September 30, 2024 order abandoned. *See Anderson v. Branen*, 27 F.3d 29, 30 (2d Cir. 1994).

in favor of the City of New York (the "City"), officials with the City's Administration for Children's Services ("ACS") (the "ACS Defendants"), and school employees (the "School Defendants") (together, "Defendants") on various claims stemming from the School Defendants' decision to report Plaintiffs to ACS for suspected child abuse. After the ACS Defendants withdrew a petition they had filed against Mr. Stollman pursuant to Article 10 of the New York Family Court Act, N.Y. Fam. Ct. Act § 1011 *et seq.* ("Article 10"), Plaintiffs brought suit under 42 U.S.C. § 1983, individually and on behalf of their infant children, for violations of the First, Fourth, and Fourteenth Amendments and New York state law. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal.

We review a district court's grant of summary judgment *de novo* and view the evidence in the light most favorable to the non-moving party below. *See James v. N.Y. Racing Ass'n*, 233 F.3d 149, 152 (2d Cir. 2000). Summary judgment is appropriate "only when there is no genuine issue as to any material fact." *Id.* A dispute is "genuine" when the evidence on the issue "would permit a reasonable juror to find for the party opposing the motion." *Figueroa v. Mazza*, 825 F.3d 89, 98 (2d Cir. 2016).

3

## I. First-Amendment Retaliation Claims Against the School Defendants.

Plaintiffs assert that, in retaliation for Mrs. Stollman's complaints against E.S.'s school and teachers, the School Defendants filed a report with ACS that falsely suggested that the Stollmans had neglected and sexually abused E.S. "To state a First Amendment retaliation claim, a plaintiff must establish that: (1) his speech or conduct was protected by the First Amendment; (2) the defendant took an adverse action against him; and (3) there was a causal connection between this adverse action and the protected speech." *Cox v. Warwick Valley Cent. Sch. Dist.*, 654 F.3d 267, 272 (2d Cir. 2011).

Here, there is no dispute that Mrs. Stollman engaged in protected speech when she complained to the school about its substandard care of E.S., who – according to Mrs. Stollman – returned home on various occasions with bruises and a wet diaper. The parties do not dispute that school psychologist Annemarie Fuschetti, one of the school officials involved in making the report, was aware of that speech. But even assuming that it could be said that the school's call to ACS one day after Mrs. Stollman's most recent complaint to the school by itself established the requisite causal link between those two events, the record contains

no evidence from which a reasonable factfinder could find that the school's call to ACS was adverse or retaliatory.

We have recognized that the protective actions of mandated reporters such as teachers, who face liability for inadequate action, are due "unusual deference," and that "absent a clear showing of retaliatory or punitive intent," such decisions "cannot be considered adverse or retaliatory." *Id.* at 274 (internal quotation marks omitted); *see also Dole v. Huntington Union Free Sch. Dist.*, 699 F. App'x 85, 87 (2d Cir. 2017) ("If the school officials who called [Child Protective Services] have a sufficient basis to suspect potential abuse, we owe unusual deference to their decisions to report reasonably suspected abuse and neglect." (alteration accepted and internal quotation marks omitted)).

Nothing in the record suggests that the School Defendants acted with retaliatory or punitive intent. Although Plaintiffs insist that the School Defendants' allegations concerning E.S.'s poor hygiene were knowingly false and misleading, they offer no evidence of such willfulness or bad faith. And while Plaintiffs counter that a prior investigation into similar reports of neglect on the part of the Stollmans had been dropped by ACS, the agency noted when it closed this case in February 2017 that "school officials *continue to report* the concerns that

E.S. . . . arrives at school with soiled diaper." App'x at 307 (alteration accepted and emphasis added). There is nothing in the record to suggest that Fuschetti or another school official involved in making the report was anything other than reasonably troubled by the reports of E.S.'s poor hygiene. And the fact that a prior investigation was dropped does not support the inference that a later report was pretextual.

As for the suspected sexual abuse, there is no dispute that, beginning in October 2017, E.S. returned home from school crying. Around this same time, on October 19, a substitute teacher reported to another school psychologist, Edward O'Connor, that E.S. selected troubling words – including "sleeping bag" and "men" – on an iPad given to her by the school for communication purposes. *Id.* at 309 (internal quotation marks omitted). Later that day, O'Connor questioned E.S. about whom she slept with, prompting E.S. to select the words "thick more men" and "asleep, no, cover, teacher." *Id.* at 312–13 (internal quotation marks omitted). Several days later, on the morning of October 27, Fuschetti was informed both that E.S. had returned home from school crying and that paraprofessional Kathleen Wheelock had observed E.S. pressing "man, finger, butt" – albeit as part of a longer string of "room men room town shopping cart

doghouse watch seatbelt finger man lunch they are going history thunder man finger butt many tired." *Id.* at 328 (internal quotation marks omitted).

While Plaintiffs now posit that E.S. was incapable of communicating via the iPad, Mr. Stollman himself testified that he could communicate with E.S. "[t]hrough her communication device, an iPad," Dist. Ct. Doc. No. 133-7 at 20, and Tonya Wheelock, E.S.'s one-on-one classroom paraprofessional, testified that E.S. "used the iPad to express her needs and her wants," Dist. Ct. Doc. No. 150-3 at 47. The School Defendants were not obliged to ignore the possibility that E.S.'s emotional state and her choice of words on the iPad were linked. Nor were they required to rule out all possible alternatives before filing the report. In fact, school officials have a legal obligation to report concerning activity to ACS. *See* N.Y. Soc. Serv. L. § 413(1)(a) (requiring school officials to file a report "when they have reasonable cause to suspect" child abuse). Though E.S. pressed the more troubling words as part of larger sequences, the school observed a pattern that emerged over the course of about eight days. Both ACS's written summary of the school's initial call and the school's follow-up report merely chronicled these observations, and neither report ever asserted that sexual abuse had occurred, let alone that Mr. Stollman was suspected of sexual abuse. To the contrary, the ACS

7

call summary acknowledged that it was "[u]nknown what specifically [was] occurring and who [was] responsible." Dist. Ct. Doc. No. 130-7 at 5.

Keeping in mind that mandatory reporters "deserve unusual deference from the judiciary," *Cox*, 654 F.3d at 274 (internal quotation marks omitted), we agree with the district court that, on the record before it, no reasonable factfinder could conclude that the school's report to ACS was adverse or retaliatory. We therefore affirm the district court's grant of summary judgment on Plaintiffs' First Amendment retaliation claims.

## II. Fourth Amendment Claims Against the ACS Defendants for Unreasonably Searching E.S.

An inspection of a child's body for evidence of abuse may implicate the child's Fourth Amendment interests. *Tenenbaum v. Williams*, 193 F.3d 581, 605–06 (2d Cir. 1999). Because parents have "rights to control the care and custody of their children," we have held that "intrusive examinations of their children for evidence of abuse [may] not be undertaken without parental consent or judicial authorization." *N.G. v. Connecticut*, 382 F.3d 225, 237 (2d Cir. 2004). Plaintiffs contend that there is a genuine dispute as to whether they consented to an inspection of E.S. that took place during a home visit by ACS caseworker Miriam Ortiz-Downes ("Ortiz"), during which Mr. Stollman lifted E.S.'s dress and Mrs.

8

Stollman removed E.S.'s diaper.

We agree with the district court that the Stollmans consented to this examination. Mrs. Stollman admitted at her deposition that, before inspecting E.S.'s body, Ortiz asked, "Can I just take a look for any marks or bruises[?]," to which Mrs. Stollman responded, "Okay." Dist. Ct. Doc. No. 133-8 at 50. Mr. Stollman similarly confirmed at his deposition that he "agree[d] that the body check should be conducted." Dist. Ct. Doc. No. 133-7 at 44.

Plaintiffs nevertheless contest the voluntariness of their consent because Ortiz "announc[ed]" her authority to inspect E.S. in a manner that effectively communicated that "the [parents] ha[d] no right to resist." *Bumper v. North Carolina*, 391 U.S. 543, 550 (1968). But the record belies that contention. During his deposition, Mr. Stollman characterized Ortiz's request as a "*suggest[ion]* to see [E.S.'s] body," Dist. Ct. Doc. No. 133-7 at 42 (emphasis added), and Mrs. Stollman similarly testified that Ortiz simply asked if she could "just take a look for any marks or bruises," Dist. Ct. Doc. No. 133-8 at 50. The more authoritative statements attributed to Ortiz – such as "I have to look at marks and bruises" and "[i]t's my job," *id.* at 84 – fall short of demonstrating coercion. *Cf. United States v. Ruiz-Estella*, 481 F.2d 723, 728 (2d Cir. 1973) (finding coercion when uniformed

9

officer took defendant to a secluded stairwell and told him "he would have to go through a baggage search" (internal quotation marks omitted)); *United States v. Mapp*, 476 F.2d 67, 78 (2d Cir. 1973) (finding coercion when officer entered defendant's bedroom with a gun in hand, announced that she was under arrest, and said "[w]e want the package" (internal quotation marks omitted)).

In addition, Plaintiffs were present the entire time and even assisted Ortiz with aspects of the inspection. This is not a situation where the parents were never consulted or were kept in the dark while the search was being conducted for an investigatory purpose. *Cf. Van Emrik v. Chemung Cnty. Dep't of Soc. Servs.*, 911 F.2d 863, 865 (2d Cir. 1990) (finding no consent when "parents were not consulted" about x-rays and "[t]heir understanding was that some additional x-rays of the [child's] injured leg were [medically necessary]"). Accordingly, we affirm the grant of summary judgment in favor of the ACS Defendants on the unreasonable search claim brought on behalf of E.S.

III. **Fourth Amendment Claims Against the ACS Defendants for Malicious Prosecution.**

Plaintiffs next claim that the ACS Defendants' filing of an Article 10 petition against Mr. Stollman amounted to malicious prosecution in violation of his Fourth Amendment rights. We agree with the district court that, at the very least, the

ACS Defendants were entitled to qualified immunity as to those claims.

Qualified immunity shields "officials from suit unless [1] the official violated a statutory or constitutional right that [2] was clearly established at the time of the challenged conduct." *Terebesi v. Torreso*, 764 F.3d 217, 230 (2d Cir. 2014) (internal quotation marks omitted). To prevail on a malicious-prosecution claim under section 1983, a plaintiff must establish "(1) the commencement or continuation of a criminal proceeding by the defendant against the plaintiff, (2) the termination of the proceeding in favor of the accused, (3) the absence of probable cause for the criminal proceeding," "(4) actual malice," and "(5) a sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights." *Alexander v. City of Syracuse*, 132 F.4th 129, 158 (2d Cir. 2025) (internal quotation marks omitted). We have never found that the initiation of a child-removal proceeding may give rise to a malicious prosecution claim. *Cf. id.* (referencing "criminal proceeding[s]"); *Manganiello v. City of New York*, 612 F.3d 149, 161 (2d Cir. 2010) (same); *see also Emerson v. City of New York*, 740 F. Supp. 2d 385, 392 (S.D.N.Y. 2010) (finding that plaintiff could not bring malicious-prosecution claim "since he was neither arrested nor otherwise detained in connection with the neglect and abuse proceedings"). Given the lack of authority

11

for such a claim, qualified immunity is appropriate because Plaintiffs' "purported [Fourth Amendment] right was not clearly established by prior case law." *Booker v. Graham*, 974 F.3d 101, 106 (2d Cir. 2020) (internal quotation marks omitted). Accordingly, the district court properly granted ACS Defendants qualified immunity on Plaintiffs' malicious prosecution claims.

## IV. Fourteenth Amendment Due Process Claims Against the ACS Defendants.

Undoubtedly, "[t]he interest of natural parents in the care, custody, and management of their child is a fundamental liberty interest protected by the Fourteenth Amendment." *Cox*, 654 F.3d at 275 (internal quotation marks omitted). Plaintiffs contend that the removal of Mr. Stollman from his home and the attendant separation from his minor children violated Plaintiffs' rights to substantive and procedural due process, beginning when Mr. Stollman was asked to leave for three days before the child-safety conference was held and continuing until he was allowed to return on February 14, 2018, almost four months later. We disagree.

### A. Procedural Due Process.

Because "[p]arents . . . have a constitutionally protected liberty interest in the care, custody[,] and management of their children," they generally may not be

deprived of that interest "without . . . due process." *Tenenbaum*, 193 F.3d at 593.

Plaintiffs contend that their due process rights were violated when Defendants

failed to provide Mr. Stollman with a hearing prior to his removal from the home.

We have held, however, that "officials may remove a child from his or her parents'

custody before a hearing is held where there is an objectively reasonable basis for

believing that a threat to the child's health or safety is imminent." *Gottlieb v.

County of Orange*, 84 F.3d 511, 520 (2d Cir. 1996). Given E.S.'s concerning iPad

use, and – more importantly – Ortiz's personal observations of what she deemed

to be inappropriate contact between Mr. Stollman and E.S, we cannot say that a

pre-deprivation hearing was required here. *See Southerland v. City of New York*,

680 F.3d 127, 149 (2d Cir. 2012) ("[T]he peril of sexual abuse" is an "imminent

danger justifying emergency removal." (internal quotation marks omitted)). To

the extent Plaintiffs argue the three-day delay between Mr. Stollman's departure

from the home on October 27 and his post-deprivation hearing on October 30 was

unreasonable, we have concluded that similar delays do not give rise to a

procedural due-process violation. *See Cecere v. City of New York*, 967 F.2d 826, 830

(2d Cir. 1992) (determining that four-day delay did not violate due process clause).

Plaintiffs next argue that they were deprived of procedural due process

13

because Defendants conducted a constitutionally inadequate investigation. But given the "need for unusual deference" to the decisions of state officials confronted with allegations of child abuse, we have held that "[a]n investigation passes constitutional muster provided simply that case workers have a reasonable basis for their findings of abuse." *Wilkinson ex rel. Wilkinson v. Russell*, 182 F.3d 89, 104 (2d Cir. 1999) (internal quotation marks omitted). Though Plaintiffs criticize several aspects of the investigation, it cannot be said that ACS lacked a reasonable basis for its investigation. Indeed, while Plaintiffs hotly dispute E.S.'s ability to communicate via her iPad (and thus discount the significance of E.S.'s selection of certain words that might normally be suggestive of sexual abuse in the home), the ACS Defendants sent their own caseworker to visit the home, which "generated significant information supporting a finding of abuse" after she observed what she perceived to be inappropriate kissing and touching between Mr. Stollman and E.S. *Id.* at 106. Plaintiffs attempt to discredit Ortiz's observations by insisting that the ACS Defendants ignored the opinion of a family caregiver, Jackie, and E.S.'s pediatrician, Dr. Jeffrey Teitelbaum, who opined that Mr. Stollman had not sexually abused E.S. But these opinions, even if sincerely held, are not the sort of "overwhelming exculpatory information" that the ACS

14

Defendants were bound to credit over the observations of their own case worker. *Id.* at 104. Considering our "unusual deference" in this area, *id.*, we agree with the district court that Plaintiffs cannot show that the investigation into the suspected abuse was constitutionally inadequate.

Finally, Plaintiffs assert that the ACS Defendants fabricated evidence against them in a manner that deprived them of a fair trial. But even putting aside whether a hearing for the return of custody pursuant to section 1028 of the New York Family Court Act qualifies as a "trial" for Fourteenth-Amendment purposes, Plaintiffs point to no specific examples of "fabricated" evidence that were produced by the ACS Defendants, relying instead on Ortiz's deposition testimony that she "didn't know" whether Mr. Stollman was sexually abusing E.S. App'x at 383 (internal quotation marks omitted). But actual knowledge was not required. Ortiz described what she observed, which provided the basis for the Article 10 petition. While Plaintiffs disagree with Ortiz's conclusions, they do not allege that she perjured herself or manufactured false facts in her report. Disagreement alone is not enough for an unfair trial claim.

For all these reasons, Plaintiffs cannot show a procedural due-process violation at any point from the start of the investigation to the eventual withdrawal

15

of the Article 10 petition about nine months later on July 17, 2018.

## B. Substantive Due Process.

"To state a claim for a violation of th[e] substantive due process right of [parental] custody, a plaintiff must demonstrate that the state action depriving him of custody was so shocking, arbitrary, and egregious that the Due Process Clause would not countenance it even if it were accompanied by full procedural protection." *Cox*, 654 F.3d at 275 (internal quotation marks omitted). Here, Mr. Stollman was separated from his family for three days before a child-safety conference was convened and a family-court judge approved the temporary deprivation of custody (which Mr. Stollman himself consented to through counsel). Such "brief removals . . . generally do not rise to the level of a substantive due process violation, at least where the purpose of the removal is to keep the child safe during investigation and court confirmation of the basis for removal." *Southerland*, 680 F.3d at 153 (internal quotation marks omitted) (finding no violation for four-day separation prior to child-safety conference). While Plaintiffs strenuously disagree with ACS's determination that separation was appropriate, they do not argue that ACS made its decision arbitrarily or was motivated by some improper purpose.

To the extent that Mr. Stollman is asserting a due-process violation for the period of separation that occurred after the child-safety conference, the fact that the family court approved the three-day removal, coupled with the fact that Mr. Stollman consented to the ongoing separation, means that "any liability" related to the continued separation "can no longer be attributed to the [Defendants] who removed the child." *Id.* This is particularly so when the family court was not misled by fabricated evidence. Similarly, while Plaintiffs assert that the ongoing home visits by ACS after Mr. Stollman returned to the home amounted to coercive interference, those visits were also approved by the family court. In any event, "[w]here there is no actual loss of custody, no substantive due process claim can lie." *Cox*, 654 F.3d at 276. As a result, Plaintiffs cannot show a substantive due-process violation.[2]

\* \* \*

---

[2] Because the district court properly denied Plaintiffs' claims against the individual defendants, Plaintiffs may not prevail on their municipal-liability claims under *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978). *See Barrett v. Orange Cnty. Hum. Rights Comm'n*, 194 F.3d 341, 350 (2d Cir. 1999). In addition, because Plaintiffs do not challenge the district court's decision not to exercise supplemental jurisdiction over their state-law claims, we affirm the dismissal of those claims without prejudice to refiling in state court.

We have considered Plaintiffs' remaining arguments and find them to be without merit.    Accordingly, we **AFFIRM** the judgment of the district court.

                              FOR THE COURT:
                              Catherine O'Hagan Wolfe, Clerk of Court