Daniel CALLAHAN, Plaintiff,

v.

CITY OF NEW YORK, P. Smith, Sergeant Robert Holt, Officer Timothy Evans, Shield # 12421, and Officer Jimmy Ponce, Shield # 29568, Defendants.

No. 13–CV–2726 (WFK)(LB).

United States District Court, E.D. New York.

Signed March 13, 2015.

Daniel Callahan, Glendale, NY, pro se.

Tavish C. Deatley, NYC Law Department, New York, NY, for Defendants.

### DECISION AND ORDER

WILLIAM F. KUNTZ, II, District Judge.

Plaintiff Daniel Callahan ("Plaintiff") brings this action against Defendants City of New York, Administration for Children's Services ("ACS") Case Worker Patricia Smith, Sergeant Robert Holt, and Police Officers Timothy Evans and Jimmy Ponce (collectively "Defendants") for violation of his civil rights under 42 U.S.C. § 1983 as well as a New York state law claim for intentional infliction of emotional distress. Specifically, Plaintiff alleges claims of false arrest, malicious prosecution, violation of due process, and intentional infliction of emotional distress. Defendants filed a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 on the basis that Plaintiff's claims must fail as a matter of law and fact, on the basis that most of the Defendants are protected by qualified immunity, and on the basis that a claim cannot be sustained against the City of New York under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Plaintiff contests Defendants' motion in its entirety. For the reasons set forth below, Defendants' motion is hereby GRANTED.

### BACKGROUND

The following facts are either undisputed or described in the light most favorable to Plaintiff, the non-moving party. *See Capobianco v. City of New York*, 422 F.3d 47, 50 n. 1 (2d Cir.2005).

**August 13, 2010 Incident and Arrest**

On August 12, 2010, Plaintiff was living in a family shelter located at 228 Pulaski Street in Brooklyn, New York. Dkt. 74

("Ds' Rule 56.1 Statement") at ¶ 12; Dkt. 77 ("P's Rule 56.1 Counter Statement") at ¶ 12. On that date, Plaintiff's young children, Isis (age 5 or 6) and Nicole (age 13), were living with him at the shelter. P's Rule 56.1 Counter Statement at ¶ 14–16; Ds' Rule 56.1 Statement at ¶ 14–16.

At 11:30 P.M., Plaintiff left the shelter, leaving his two children in their room. P's Rule 56.1 Counter Statement at ¶ 17. Plaintiff alleges that he left the door to his and his children's room locked. *Id.* at ¶ 22. Around 2:00 A.M., a security guard entered the room and found Plaintiffs two children alone. *Id.* at 18; Dkt. 78–8 ("April 3, 2012 Fam. Ct. Transcript") at 31. At 2:33 A.M., the security guard called 911 to inform the New York City Police Department that the children had been left unattended. Police Officers Timothy Evans ("Evans") and Jimmy Ponce ("Ponce") responded to the call. P's Rule 56.1 Counter Statement at ¶ 17–19; Dkt. 75–10 ("911 Call Log"). After observing the children alone in the room, Officers Evans and Ponce called Sergeant Holt ("Holt") for assistance. Ds' Rule 56.1 Statement at ¶ 22; P's Rule 56.1 Counter Statement at ¶ 22. After speaking with Plaintiff's children and the security guard, the three officers removed the children from the shelter and transported them to ACS in Manhattan. Ds' Rule 56.1 Statement at ¶ 23. The two children were placed into the custody of ACS without the permission of the Plaintiff and without a court order. P's Rule 56.1 Counter Statement at ¶ 24.

More than two hours later, Plaintiff returned to the shelter. P's Rule 56.1 Counter Statement at ¶ 25; Ds' Rule 56.1 Statement at ¶ 25. Upon his return, Plaintiff was told to report to the 79 Precinct, which he did after waiting at the shelter for forty-five minutes. P's Rule 56.1 Counter Statement at ¶ 26–27; Ds' Rule 56.1 Statement at ¶ 26–27. Plaintiff arrived at the precinct at around 7:00 A.M. on the morning of August 13, 2010. April 3, 2012 Fam. Ct. Transcript at 64. Plaintiff was then placed under arrest and charged with two counts of Endangering the Welfare of a Child. P's Rule 56.1 Counter Statement at ¶ 30; Ds' Rule 56.1 Statement at ¶ 30. These criminal charges were dismissed in the interests of justice on August 19, 2010, at which point Plaintiff was released from jail. Dkt. 75–12 ("Crim. Dispo."); P's Rule 56.1 Counter Statement at ¶ 48 (noting his release from jail on August 19, 2010).

**Family Court Proceedings**

On August 16, 2010, ACS Caseworker Patricia Smith filed two neglect petitions, one on behalf of each of Plaintiff's children, under Article 10 of the Family Court Act in Queens County Family Court. P's Rule 56.1 Counter Statement at ¶ 33–35; Ds' Rule 56.1 Statement at ¶ 33–35. That same day, a hearing was held before the Honorable Margaret McGowan of Queens County Family Court. Dkt. 75–13 ("Aug. 16, 2010 Fam. Ct. Transcript"). Judge McGowan remanded the children to the custody of ACS, finding that this was in the best interests of the children and that the emergency removal of the children was proper under Section 1024 of the New York Family Court Act. *Id.* at 4–5; Dkt. 79–1 ("Excerpts of the Queens County Family Court official record for Dockets No. NN17767–68110") at 20–23; *see also* P's Rule 56.1 Counter Statement at ¶ 37–38. It is uncontested that Plaintiff was not present at the August 16, 2010 hearing. *See, e.g.,* P's Rule 56.1 Counter Statement at ¶ 41.

At the August 16, 2010 hearing, Judge McGowan ordered that Plaintiff be served with the Summons and Petition. Aug. 16, 2010 Fam. Ct. Transcript at 4–6. Plaintiff alleges that he was never served. P's Rule 56.1 Counter Statement at ¶ 43. At a

subsequent hearing on August 19, 2010, the Honorable Maria Arias of Queens County Family Court was informed that Plaintiff had been served, and she ordered that he be produced for a hearing on September 13, 2010. Dkt. 75–14 ("Aug. 19, 2010 Fam. Ct. Transcript") at 2–3.

On September 13, 2010, it is uncontested that Plaintiff was present in Queens County Family Court. P's Rule 56.1 Counter Statement at ¶ 45. Plaintiff was assigned counsel at the hearing. Dkt. 75–15 ("Sept. 13, 2010 Fam. Ct. Transcript") at 8. Plaintiff alleges that he was unable to speak to his counsel before the hearing and that he was not contacted by his counsel again until months after the hearing. P's Rule 56.1 Counter Statement at ¶ 45.

On January 24, 2012, after a late October transfer of the Article 10 Petitions from Queens County Family Court to Kings County Family Court, the Kings County Family Court determined that continued placement of the children in the custody of the Commissioner of Social Services was in the children's best interests. P's Rule 56.1 Counter Statement at ¶ 46–47.

On April 3, 2012, the Article 10 Petitions against Plaintiff were dismissed. Dkt. 79–2 ("Excerpts of the Kings County Family Court official record for Dockets No. NN32613–14110") at 5. On September 12, 2012, the children were permanently placed with their mother and the case was closed with a final discharge of the children from the custody of the Commissioner of Social Services. *Id.* at 3–4.

**Procedural History**

Plaintiff filed his complaint on May 2, 2013 and his amended complaint on November 26, 2013. Dkt. 1 ("Compl."); Dkt. 30 ("Amended Compl."). The Court reads Plaintiff's complaint and subsequent filings as alleging claims under 42 U.S.C. § 1983 for deprivation of civil rights, as well as a state law claim of intentional infliction of emotional distress and claims against the City of New York under *Monell,* 436 U.S. at 690–91, 98 S.Ct. 2018.

Defendants moved for Summary Judgment on October 17, 2014. *See* Dkt. 72 ("Notice of Mot."). Defendants identify the following claims as being raised by Plaintiff: (1) false arrest; (2) unlawful entry; (3) malicious prosecution; (4) violation of substantive due process; (5) violation of procedural due process; (6) municipal liability against the City of New York under *Monell v. Dep't of Soc. Servs.,* 436 U.S. at 690–91, 98 S.Ct. 2018; and (7) intentional infliction of emotional distress under New York state law. *See* Dkt. 73 ("Memo in Support"); Dkt. 81 ("Reply"). Defendants move for summary judgment on all of these claims on the basis that, as a matter of law or uncontested material fact, Defendants are entitled to summary judgment because Plaintiff has failed to state a cause of action for each of the aforementioned claims. *See* Memo in Support; Reply. Defendants also move for summary judgment on the basis that they are entitled to qualified immunity. Memo in Support at 17–23.

Plaintiff counters Defendants on every claim. The Court will address each claim in turn.

## DISCUSSION

### I. Legal Standard

A court appropriately grants summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). No genuine issue of material fact exists "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Love-*

*joy–Wilson v. NOCO Motor Fuel, Inc.,* 263 F.3d 208, 212 (2d Cir.2001) (quoting *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). The moving party must meet its burden by pointing to evidence in the record, including depositions, documents, affidavits, or other materials which it believes demonstrates the absence of a genuine issue of material fact. *See* Fed.R.Civ.P. 56(c)(1)(A), (2); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "In determining whether summary judgment is appropriate, [the] Court will construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Brod v. Omya, Inc.,* 653 F.3d 156, 164 (2d Cir. 2011) (internal quotation marks and citations omitted). The role of the district court is not to weigh the evidence and determine the truth of the matter, but rather to perform "the threshold inquiry of whether there is the need for a trial[.]" *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

If the moving party fulfills its preliminary burden, the burden shifts to the non-movant to raise the existence of a genuine issue of material fact. Fed.R.Civ.P. 56(c)(1). Statements that are devoid of specifics and evidence that is merely colorable are insufficient to defeat a properly supported motion for summary judgment. *See Bickerstaff v. Vassar Coll.,* 196 F.3d 435, 452 (2d Cir.1999); *Scotto v. Almenas,* 143 F.3d 105, 114 (2d Cir.1998). "A dispute about a 'genuine issue' exists for summary judgment purposes where the evidence is such that a reasonable jury could decide in the non-movant's favor." *Beyer v. Cnty. of Nassau,* 524 F.3d 160, 163 (2d Cir.2008) (citing *Guilbert v. Gardner,* 480 F.3d 140, 145 (2d Cir.2007)).

When considering a motion for summary judgment against a *pro se* litigant, the complaint and pleadings of a *pro se* plaintiff must be liberally construed in favor of that party and held to a less rigorous standard of review than pleadings drafted by an attorney. *See Angulo v. Nassau Cnty.,* 10–CV–1500, 89 F.Supp.3d 541, 548–49, 2015 WL 993459, at *4 (E.D.N.Y. Mar. 6, 2015) (Bianco, J.). The Second Circuit "liberally construe[s] pleadings and briefs submitted by *pro se* litigants, reading such submissions to raise the strongest arguments they suggest." *Bertin v. United States,* 478 F.3d 489, 491 (2d Cir.2007) (internal quotation marks and citations omitted). Less rigorous standard notwithstanding, "[p]roceeding *pro se* does not otherwise relieve a litigant of the usual requirements of summary judgment, and a *pro se* party's bald assertions unsupported by evidence[ ] are insufficient to overcome a motion for summary judgment." *Angulo,* 89 F.Supp.3d at 549. 2015 WL 993459, at *4 (internal quotation marks and citations omitted).

## II. Analysis

The Court reads Plaintiff's complaint, amended complaint, and motion in opposition to summary judgment to raise the following claims: (1) false arrest; (2) unlawful entry; (3) malicious prosecution; (4) violation of substantive due process; (5) violations of procedural due process; (6) municipal liability against the City of New York under *Monell,* 436 U.S. at 690–, 98 S.Ct. 2018; and (7) intentional infliction of emotional distress. Compl.; Amended Compl.; Dkt. 76 ("Memo in Opp.").

Defendants move for summary judgment on all of Plaintiff's claims on the basis that each and every one of Plaintiff's claims must fail as a matter of law or as a matter of fact that Plaintiff cannot or does

not dispute. *See* Memo in Support; Reply. The Court will address Defendants' motion vis a vis each of the Plaintiff's claims in turn.

### A. Section 1983 and Related State Law Claims

To maintain a cause of action under 42 U.S.C. § 1983, a plaintiff must show that the defendant, acting under color of state law, denied the plaintiff a constitutional or federal statutory right. 42 U.S.C. § 1983; *Bryant v. Maffucci*, 923 F.2d 979, 982–83 (2d Cir.1991). "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Codrington v. City of New York*, 12–CV–1650, 2015 WL 893567, at *3 (E.D.N.Y. Feb. 27, 2015) (Townes, J.) (citing *Sykes v. James*, 13 F.3d 515, 519 (2d Cir.1993)) (internal quotation marks omitted). Plaintiff's first five substantive claims (false arrest, unlawful entry, malicious prosecution, violation of substantive due process, and violations of procedural due process), as well as Plaintiff's claim of municipal liability of the City of New York, are all claims alleged under Section 1983. Defendants' motion for summary judgment on the issue of qualified immunity is also alleged under Section 1983. The Court will address each claim in turn in the order they were raised by the parties.

### 1. False Arrest

■ The Court reads Plaintiff's papers as asserting state and federal law claims of false arrest. "A claim of false arrest covers the time period from arrest through arraignment, after which time the claim becomes one for malicious prosecution. A [Section] 1983 claim for false arrest, resting on the Fourth Amendment right of an individual to be free from unreasonable seizures, including arrest without probable cause, is substantially the same as a claim

for false arrest under New York [state] law." *Id.* at *3 (internal citations and quotation marks omitted). The court will therefore consider Plaintiff's section 1983 and state-law false arrest claims together.

■ A false arrest claim under section 1983 and New York law requires the plaintiff to show that: "(1) the defendant intended to confine him, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement[,] and (4) the confinement was not otherwise privileged." *Id.* at *4 (citing *Jocks v. Tavernier*, 316 F.3d 128, 134–35 (2d Cir.2003)) (internal quotation marks omitted). Probable cause is always a complete defense to any false arrest claim, whether under federal or New York law. *See Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir.1996).

■ Probable cause "exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime. [The] probable cause inquiry is based upon whether the facts known by the arresting officer at the time of arrest objectively provided probable cause to arrest." *Codrington*, 2015 WL 893567, at *4 (internal quotation marks and citation omitted). Further, an officer in possession of credible information sufficient to affect an arrest is under no obligation to conduct further investigation. *See, e.g., Panetta v. Crowley*, 460 F.3d 388, 394–95, 398 (2d Cir.2006) ("[A]n officer's failure to investigate an arrestee's protestations of innocence generally does not vitiate probable cause ... Once an officer has probable cause, he or she is neither required nor allowed to continue investigation, sifting and weighing information.") (internal quotation marks and citations omitted).

■ Here, Defendants argue that the security guard's statements to Officers Evans and Ponce and Sergeant Holt, as well as their direct observation of the two children alone in the room at the shelter after 2:30 A.M., created probable cause. Memo in Support at 8. Under New York Penal Law § 260.10, "[a] person is guilty of endangering the welfare of a child when ... [h]e or she knowingly acts in a manner likely to be injurious to the physical, mental or moral welfare of a child less than seventeen years old." N.Y. Penal Law § 260.10(1). Leaving a young child alone in a locked apartment for two-and-a-half hours has been found to violate this statute. *See Guzman v. Holder*, 340 Fed. Appx. 679, 681 (2d Cir.2009) (citing *People v. Watson*, 182 Misc.2d 644, 700 N.Y.S.2d 651 (N.Y.Crim.Ct.1999)). Therefore, the security guard's 2:33 A.M. 911 call that two children, ages 5 or 6 and 13, had been left alone in an apartment, along with the officers' observation of the children in the apartment, is sufficient to have provided the three officers with probable cause to arrest Plaintiff when he arrived at the precinct the next morning.

Because probable cause existed for the arrest, Plaintiff's false arrest claims, both federal and state, fail as a matter of law. On this point, Defendants' motion for summary judgment is GRANTED.

### 2. Unlawful Entry

The Court reads Plaintiff's opposition to Defendants' summary judgment motion as asserting a Section 1983 claim based on a Fourth Amendment violation of unlawful entry. *See, e.g.,* Mot. in Opp. at 6.

■ The Fourth Amendment generally prohibits a warrantless entry into an individual's home. *See Illinois v. Rodriguez*, 497 U.S. 177, 181, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990). It is well settled, however, "that the warrant requirement must yield on those situations were exigent circumstances demand that law enforcement agents act without delay." *Brown v. City of New York*, 14–CV–2700, 2015 WL 427942, at *2 (E.D.N.Y. Feb. 2, 2015) (Cogan, J.) (citing *United States v. MacDonald*, 916 F.2d 766, 769 (2d Cir.1990)) (internal quotation marks omitted). "Therefore, police officers need either a warrant or probable cause plus exigent circumstances in order to make a lawful entry into a home." *Id.* (internal quotation marks and citation omitted). As discussed above, the three officers had probable cause to enter the apartment due to the security guard's 911 call. The issue is whether there were exigent circumstances.

■ "The essential question in determining whether exigent circumstances justified a warrantless entry is whether law enforcement agents were confronted by an urgent need to render aid or take action. This is an objective test that turns on an examination of the totality of the circumstances confronting law enforcement agents in the particular case." *Id.* at *3 (internal quotations, brackets, ellipses, and citation marks omitted).

■ "Even in the context of a child's safety, the mere possibility of danger does not make it objectively reasonable to believe that the circumstances were exigent." *Rivera ex rel. Rivera v. Leto*, 04–CV–7072, 2008 WL 5062103, at *4 (S.D.N.Y. Nov. 25, 2008) (Gardephe, J.) (internal quotation marks and citations omitted). "Risks that a child will suffer actual injury, sexual abuse, or be left bereft of care and supervision can suffice to create an emergency." *E.D. ex rel. V.D. v. Tuffarelli*, 692 F.Supp.2d 347, 361 (S.D.N.Y.2010) (Castel, J.) (internal quotation marks and citations omitted).

■ In this case, Officers Evans and Ponce arrived at the door to Plaintiff's

room in the homeless shelter after receiving a 911 call from the shelter's security guard. *See* 911 Call Log. The 911 call indicated that two children had been left alone in Plaintiff's room at the shelter. P's Rule 56.1 Counter Statement at ¶ 19–20; Ds' Rule 56.1 Statement at ¶ 19–20. While there is a question of whether Plaintiff's door was locked or unlocked by the time the officers arrived, Plaintiff does not contest that his young children had been alone in the room since 11:30 P.M. P's Rule 56.1 Counter Statement at ¶ 17, 22 ("Officers and[/]or third parties opened my closed door to my home to make this observation"). The facts are undisputed then that Plaintiff's children had been "left bereft of care and supervision" for almost three hours by the time the officers arrived. *See E.D. ex rel. V.D.*, 692 F.Supp.2d at 361. The harm of being left alone was therefore not only an imminent risk, it was ongoing. This is sufficient to create an exigent circumstance which, when coupled with the probable cause established above, permitted the officers to lawfully enter Plaintiff's room.

Probable cause and an exigent circumstance existed to justify the officer's entrance into Plaintiff's room. Thus, Plaintiff's claim of unlawful entry fails as a matter of law. On this point, Defendants' motion for summary judgment is GRANTED.

### 3. Malicious Prosecution

The Court reads Plaintiff's papers as asserting federal law claims of malicious prosecution in regards to the criminal proceeding and in regards to the family court proceeding. The Court will discuss the law on malicious prosecution before analyzing each claim in turn.

"In order to prevail on a [Section] 1983 claim against a state actor for malicious prosecution, a plaintiff must show a violation of his rights under the Fourth Amendment and must establish the elements of a malicious prosecution claim under [New York] state law." *Manganiello v. City of New York*, 612 F.3d 149, 160–61 (2d Cir.2010) (internal citations omitted). "To establish a malicious prosecution claim under New York law, a plaintiff must prove (1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for the defendant's actions." *Id.* at 161 (internal quotation marks and citations omitted).

#### a. Criminal Proceeding

Although Defendants raise multiple bases for summary judgment on Plaintiff's claim of malicious prosecution in regards to the criminal proceeding, the Court's above finding of probable cause for Plaintiff's arrest on the charges of Endangering the Welfare of a Child is dispositive on the non-existence of the third factor required for a malicious prosecution claim under New York and federal law. "A finding of probable cause supporting an arrest defeats a malicious prosecution claim unless plaintiff can demonstrate that at some point subsequent to the arrest, additional facts came to light that negated probable cause." *Dukes v. City of New York*, 879 F.Supp. 335, 342 (S.D.N.Y.1995) (Leisure, J.) (internal citations omitted). Plaintiff has alleged no additional facts that would negate a finding of probable cause.

Thus, Plaintiff's claim of malicious prosecution in regards to the criminal proceeding fails as a matter of law. On this point, Defendants' motion for summary judgment is GRANTED.

#### b. Family Court Proceeding

For the purposes of deciding this issue, the Court assumes without deciding

that the initiation of an ACS proceeding can give rise to a Section 1983 claim for malicious prosecution. *See Orlik v. Dutchess Cnty.,* 603 F.Supp.2d 632, 649 (S.D.N.Y.2009) (Conner, J.) (collecting cases).

One of the requirements of a Section 1983 claim for malicious prosecution is that the plaintiff must have suffered a deprivation of his Fourth Amendment rights, *i.e.,* the plaintiff must have been seized in relation to the specific proceeding alleged to be malicious. *See Emerson v. City of New York,* 740 F.Supp.2d 385, 392 (S.D.N.Y. 2010) (Marrero, J.) ("The Complaint does not allege any facts that plausibly support a claim that [the accused officers] seized [the plaintiff] within the traditional meaning of the Fourth Amendment since he was neither arrested nor otherwise detained in connection with the neglect and abuse proceedings in [New York State] Family Court.") (internal citation omitted).

In this case, Plaintiff was in jail at the same time the Family Court proceedings were occurring, *see* Mot. in Opp. at 17, but he was not in jail because or as a result of the Family Court proceedings. Plaintiff has failed to allege or provide evidence of a deprivation of his Fourth Amendment rights in connection with the family court proceeding. As a result, Plaintiff's malicious prosecution claim must fail. On this point, Defendants' motion for summary judgment is GRANTED.

### 4. Violation of Substantive Due Process

The Court understands Plaintiff's papers to be asserting claims for interference with familial relations in violation of the substantive due process right under the Fourteenth Amendment. Plaintiff alleges that he and his children were separated from each other for nineteen months. Mot. in Opp. at 19.

In general, there is a "substantive right under the Due Process Clause to remain together without the coercive influence of the awesome power of the state." *Tenenbaum v. Williams,* 193 F.3d 581, 600 (2d Cir.1999) (internal quotation marks and citations omitted). A "substantive due process claim challenges the fact of the [child's] removal [from the parent]." *Southerland v. City of New York,* 680 F.3d 127, 142 (2d Cir.2012) (internal citations and brackets omitted). "To establish a violation of substantive due process rights, a plaintiff must demonstrate that the state action was so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Id.* at 151 (internal quotation marks and citations omitted). "The temporary separation of a child from [his or] her parents does not constitute an interference that is severe enough to constitute a violation of the parents' substantive due-process rights." *Id.* at 152 (internal quotation marks, brackets, and citations omitted). This is especially true "where the purpose of the removal is to keep the child safe during investigation and court confirmation of the basis for removal." *Id.* at 153 (internal quotation marks and citations omitted). Further, once "court confirmation of the basis for removal is obtained, any liability for the continuation of the allegedly wrongful separation of parent and child can no longer be attributed to the officer who removed the child." *Id.* (internal quotation marks and citations omitted).

Plaintiff was separated from his children on August 13, 2010, when his children were placed in the custody of ACS. P's Rule 56.1 Counter Statement at ¶ 24. On August 16, 2010, the Honorable Margaret McGowan of Queens County Family Court ordered that the children should remain in the care of ACS as it was "contrary to the welfare of the child[ren]" to be

returned to the Plaintiff. Aug. 16, 2010 Fam. Ct. Transcript at 4–5. Following the Family Court order, Defendants in this action can only be held liable, if at all, for the removal of the children from Plaintiff for the period from August 13 to August 16, but not after. *See Southerland*, 680 F.3d at 153 (Once "court confirmation of the basis for removal is obtained, any liability for the continuation of the allegedly wrongful separation of parent and child can no longer be attributed to the officer[s] who removed the child.") (internal quotation marks and citations omitted). This four-day separation, between Friday and Monday morning, does not constitute a violation of Plaintiff's substantive due process rights. *See, e.g., Schweitzer v. Crofton*, 935 F.Supp.2d 527, 549 (E.D.N.Y. 2013) (Brodie, J.) (finding that a six-day separation of parent and child did not violate substantive due process rights); *E.D. ex rel. V.D.*, 692 F.Supp.2d at 368 (no substantive due process violation where children were removed on a Friday and judicial proceedings commenced in a timely manner on the following Monday).

Thus, Plaintiff's claim of deprivation of a substantive due process right in regards to his separation from his children cannot be sustained. On this point, Defendants' motion for summary judgment is GRANTED.

### 5. Violation of Procedural Due Process

The Court understands Plaintiff's papers to be asserting claims for violation of procedural due process rights guaranteed by the Fourteenth Amendment based on the following allegations: (1) there was no predeprivation hearing; (2) there was no post-deprivation hearing; (3) Plaintiff was not served with the summons and petition for the post-deprivation hearings; and (4) Plaintiff was inadequately represented by counsel. Amended Compl. at ¶ 9–10; Mot.

in Opp. at 23, 25. The Court will address each claim in turn.

#### a. No Pre–Deprivation Hearing

Plaintiff claims that his procedural due process rights were violated because there was no hearing before his children were removed from his room at the homeless shelter.

 "As a general rule[,] before parents may be deprived of the care, custody, or management of their children without their consent, due process—ordinarily a court proceeding resulting in an order permitting removal—must be accorded to them." *Southerland*, 680 F.3d at 142 (internal quotation marks, citations, and ellipses omitted). However, in emergency circumstances, a child may be taken into custody "by a responsible State official *without court authorization or parental consent.*" *Id.* at 142 (internal quotation marks and citations omitted). To show that emergency circumstances existed at the time of the removal, "[t]he government must offer objectively reasonable evidence that harm [was] imminent." *Schweitzer*, 935 F.Supp.2d at 546 (internal quotation marks and citations omitted) (alteration in original). "The Second Circuit has stated that these circumstances include the risk that children will be left bereft of care and supervision and immediate threats to the safety of the child. If at any time a child must be removed for his or her protections and there is not reasonably sufficient time to seek predeprivation judicial authorization, there would not be, as a matter of law, any violation of due process rights." *Id.* (internal quotation marks, brackets, and citations omitted).

"[T]here is no practical difference between emergency circumstances—the standard used to evaluate plaintiff['s] Fourteenth Amendment claim on [his] children's removal—and probable cause/ exigent circumstances—the standard used to

evaluate the plaintiff['s] Fourth Amendment claim." *Southerland v. Woo,* 44 F.Supp.3d 264, 276 (E.D.N.Y.2014) (Cogan, J.) (internal citations omitted). Therefore, the Court having found that there were probable cause and exigent circumstances to justify the officers' taking of the children to ACS, the Court must now also find that there were emergency circumstances in this case.

Thus, Plaintiff's claim of deprivation of a procedural due process right due to the lack of a pre-deprivation hearing fails as a matter of law. On this point, Defendants' motion for summary judgment is GRANTED.

### b. No Post–Deprivation Hearing

■■ Plaintiff claims that his procedural due process rights were violated because there was no post-deprivation hearing. *See* Amended Compl. at ¶ 10.

■■ As a general rule, "a plaintiff may have a viable claim for violation of procedural due process even where emergency circumstances existed at the time of removal, if the plaintiff does not receive a timely and adequate post-deprivation hearing." *Southerland,* 680 F.3d at 151 n. 22 (internal citation omitted).

There is no need for the Court to address the law regarding post-deprivation hearings further because it is clear that at least two post-deprivation hearings were held. The first was held on August 16, 2010. *See* Aug. 16, 2010 Fam. Ct. Transcript. There is no disagreement that Plaintiff was not present for that hearing. There was also a second post-deprivation hearing on September 13, 2010. *See* Dkt. 75–15 ("Sept. 13, 2010 Fam. Ct. Transcript") at 7. Plaintiff was present for that hearing. *Id.*

Thus, Plaintiff's claim of deprivation of a procedural due process right due to the lack of a post-deprivation hearing fails as a matter of uncontested fact. On this point, Defendants' motion for summary judgment is GRANTED.

### c. No Service of Summonses

■■ Plaintiff claims that his procedural due process rights were violated because he was not served with summonses before the post-deprivation hearings. There are two hearings at issue here: the August 16, 2010, hearing, and the September 13, 2010, hearing.

Plaintiff first argues that his procedural due process rights were violated because he was not provided with service of a summons and petition before the August 16, 2010 hearing. According to Section 1027 of the New York Family Court Act ("Section 1027"), "[i]f such parent … is not physically present at the time the child is removed, services of the summons and petition shall be governed by [Section 1036 of the New York Family Court Act ("Section 1036")]," which requires that "the petition and summons shall be served within two court days after their issuance." N.Y. Fam. Ct. Act §§ 1027(b)(ii), 1036. The Supreme Court of the United States has stated that this is part of the "extensive procedural protections" afforded to parents who are subjected to temporary removal proceedings. *Santosky v. Kramer,* 455 U.S. 745, 777, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982).

Under Sections 1027 and 1036, when the parent is not present for the removal, it is not until after the initial court hearing on the removal of the children that the petition and summons are issued. Plaintiff was not present when his children were removed from his room at the homeless shelter. August 16, 2010 was the date on which the petition and summons were issued. Plaintiff, therefore, had no right to service of a summons before that time under Section 1036 of the New York Fami-

ly Court Act. N.Y. Fam. Ct. Act §§ 1027, 1036. There is no deprivation of Plaintiff's procedural due process rights due to lack of service of summons and petition before the August 16, 2010 hearing. Defendants' motion for summary judgment on this issue is GRANTED.

Plaintiff's next argues that he experienced a deprivation of his procedural due process rights when he did not receive the summons and petition from the August 16, 2010 hearing for the September 13, 2010 hearing. Mot. in Opp. at 26.

· As an initial matter, the Court notes that "[i]t is questionable whether any notice at all is *constitutionally* required for [Section] 1027 hearings." *Green ex rel. T.C. v. Mattingly*, 07–CV–1790, 2010 WL 3824119, at *9 (E.D.N.Y. Sept. 23, 2010) (Vitaliano, J.) (internal citations omitted; emphasis in the original). However, the Court finds that it does not need to decide this issue as a matter of law because Defendants have met their burden of showing Plaintiff was served with the summons and petition. Defendants have provided both the affidavit of service of the summons and petition on Plaintiff, as well as a court transcript in which the Honorable Maria Arias noted on the record that she had received the affidavits of service showing that Plaintiff had been served. Dkt. 79–1 at 11; Aug. 19, 2010 Fam. Ct. Transcript at 2. Plaintiff has provided only his own allegations that he was not served. At the summary judgment stage, this scintilla of evidence is insufficient to create an issue of material fact.

Thus, there is no deprivation of Plaintiff's procedural due process rights due to lack of service of summons and petition before the September 13, 2010 hearing. Defendants' motion for summary judgment on this issue is GRANTED.

### d. Inadequate Representation by Counsel

The Court reads Plaintiff's claims that he was denied counsel as claims of ineffective assistance of counsel under the standard set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) because Plaintiff was provided with counsel at the September 13, 2010 hearing. *See* Sept. 13, 2010 Fam. Ct. Transcript at 8.

The requirements of an ineffective assistance of counsel claim under the *Strickland* standard are clear. "To succeed, [Plaintiff] must (1) demonstrate that his counsel's performance fell below an objective standard or reasonableness in light of prevailing professional norms; and (2) affirmatively prove prejudice arising from counsel's allegedly deficient representation." *Jackson v. Conway*, 763 F.3d 115, 152 (2d Cir.2014) (internal quotation marks and citations omitted). Of specific importance in this action is the second factor, which requires a showing by Plaintiff that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 153 (citing *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052) (internal quotation marks omitted). When counsel has won an issue for his client, there is no ineffective assistance of counsel claim because there has been no prejudice to the client. *See, e.g., Burns v. Ercole*, 08–CV–8624, 2011 WL 3962499, at *4 (S.D.N.Y. Sept. 8, 2011) (Baer, J.) ("[A]ppellate counsel had no grounds to accuse the trial judge of ineffectiveness, because trial counsel won dismissal of the weapons charges against [plaintiff] [.]"); *United States v. Nuculovic*, 04–CR–1110, 2006 WL 3591930, at *12 (S.D.N.Y. Dec. 12, 2006) (Cote, J.) (noting that an ineffective assistance of counsel claim must fail when counsel won an acquittal).

In this case, it is undisputed that the Family Court charges against Plaintiff were dismissed on April 3, 2012. P's Rule 56.1 Counter Statement at ¶ 45 ("[I] had every intention of fighting; I did and won."). Plaintiff suffered no prejudice as a result of his counsel's assistance, whether effective or ineffective. Therefore, Plaintiff suffered no deprivation of procedural due process rights due to ineffective assistance of counsel. Defendants' motion for summary judgment on this issue is GRANTED.

### 6. Qualified Immunity and Municipal Liability

The Court hereby GRANTS Defendants' motion for summary judgment on all of the claims arising under Section 1983. The Court will not address either (1) the Plaintiff's claim for municipal liability against the City of New York under *Monell,* 436 U.S. at 690–91, 98 S.Ct. 2018 or (2) the Defendants' motion for summary judgment on the issue of qualified immunity as both of the issues are moot since there are no more substantive Section 1983 claims at issue.

### B. Claim Unrelated to Section 1983

Plaintiff's papers also raise one claim unrelated to Section 1983, namely, Plaintiff's claim of intentional infliction of emotional distress under New York state law. Amended Compl. at 8; Memo in Opp. at 38–42.

### 7. Intentional Infliction of Emotional Distress

 As an initial matter, there are certain procedural hurdles that a plaintiff must cross before he is able to sue the City of New York or its employees. Under New York law, an individual suing the city or its employees must file a notice of claim. For tort claims, such as claims of intentional infliction of emotional distress,

New York's General Municipal Law provides in pertinent part:

> No action ... shall be ... maintained against a city ... or of any officer, agent or employee thereof ... unless, (a) a notice of claim shall have been made and served upon the city ... in compliance with section fifty-e of this article[.]

N.Y. Gen. Mun. Law § 50–i(1). Section 50–e provides in pertinent part that for a "case founded upon tort," notice of the claim must be served "within ninety days after the claim arises." N.Y. Gen. Mun. Law § 50–e(1)(a). "A plaintiff's state law tort claims in a federal civil rights action against a city and police officers employed by the city should be dismissed when plaintiff's notice of claim is filed more than 90 days after the claims arose." *Bender v. Alvarez,* 06–CV–3378, 2009 WL 112716, at *10 (E.D.N.Y. Jan. 16, 2009) (Amon, J.) (citing *Brogdon v. City of New Rochelle,* 200 F.Supp.2d 411, 428 (S.D.N.Y.2002) (McMahon, J.)) (internal quotation marks omitted).

The intentional infliction of emotional distress alleged by Plaintiff occurred on August 13, 2010, when Plaintiff's children were removed from his room at the homeless shelter and placed in the custody of ACS. Mot. in Opp. at 41–42. Plaintiff did not file his notice of claim until sometime during the year 2012. Mot. in Opp. at 38. This is longer than ninety days. As a result, Plaintiff's notice was untimely. Therefore Defendants' motion for summary judgment on the state law claim for intentional infliction of emotional distress must be GRANTED.

 Even if the Court were to reach the merits of Plaintiff's intentional infliction of emotional distress claim, the Court would still grant the Defendants' motion for summary judgment on the issue. Under New York law, "in order to state a claim for intentional infliction of

emotional distress, a plaintiff must plead: (1) extreme and outrageous conduct; (2) intent to cause, or reckless disregard or a substantial possibility of causing, severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress." *Frankel v. N.Y. State Office of Children & Family Servs.*, 11–CV–7973, 2013 WL 1803692, at *8 (S.D.N.Y. Apr. 29, 2013) (Ellis, Mag. J.) (citing *Stuto v. Fleishman*, 164 F.3d 820, 827 (2d Cir.1999)) (internal quotation marks omitted). For conduct to meet the standard of "extreme and outrageous," "it must be so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in civilized society." *Shapiro v. Kronfeld*, 00–CV–6286, 2004 WL 2698889, at *25 (S.D.N.Y. Nov. 24, 2004) (Sweet, J.) (internal quotation marks and citations omitted). "[T]he conduct which allegedly caused the emotional distress must be intentionally directed at the plaintiff without reasonable justification; a showing of gross negligence is insufficient." *Id.* (internal citations omitted).

Here, Plaintiff alleges that the Defendants committed the tort of intentional infliction of emotional distress merely by doing their jobs to report and investigate allegations of suspected child neglect, file neglect petitions with the Queens and Kings County Family Courts, and pursue the allegations of child neglect in those courts until a disposition was reached. *See id.* (finding individual defendants "acted in compliance with their statutory obligations" in reporting, investigating, and prosecuting allegations of child neglect). These actions are insufficient to support Plaintiff's allegation of intentional infliction of emotional distress by the Defendants. Therefore, Defendants' motion for summary judgment on the state law claim for intentional infliction of emotional distress is GRANTED.

## CONCLUSION

Accordingly, on the basis of the record and law as set forth above, the Court GRANTS the Defendants' motion for summary judgment. All claims against the Defendants having been dismissed, the Clerk of Court is hereby directed to close this case.

**SO ORDERED.**