18-739-pr
*Booker v. Graham*

# 𝔘nited 𝔖tates 𝔆ourt of 𝔄ppeals
# for the 𝔖econd 𝔆ircuit

August Term, 2019

(Argued: May 8, 2020          Decided: August 31, 2020)

Docket No. 18-739-pr

_____

AMIN B. BOOKER, AKA AMIN BOOKER,

*Plaintiff-Appellant*,

JAMAINE PORTER, EARNEST STOKES, PAUL COLON,
MICHAEL MCCOY, LAWRENCE WILSON,

*Plaintiffs*,

v.

HAROLD D. GRAHAM, SUPERINTENDENT, AUBURN CORRECTIONAL
FACILITY; GRAFTON ROBINSON, DEPUTY SUPERINTENDENT OF
SECURITY, AUBURN CORRECTIONAL FACILITY; CAPTAIN FAGAN,
AUBURN CORRECTIONAL FACILITY; DONNA MARTIN, FOOD SERVICES
ADMINISTRATOR, AUBURN CORRECTIONAL FACILITY; MARK ARRIA,
CORRECTIONAL OFFICER, AUBURN CORRECTIONAL FACILITY; DONALD
CARPENTER, CORRECTIONAL OFFICER, AUBURN CORRECTIONAL
FACILITY; THOMAS STEVENS, CORRECTIONAL OFFICER, AUBURN
CORRECTIONAL FACILITY; BRIAN GRIFFIN, CORRECTIONAL OFFICER,
AUBURN CORRECTIONAL FACILITY,

*Defendants-Appellees*,

JUSTIN THOMAS, DEPUTY SUPERINTENDENT OF PROGRAMS, AUBURN CORRECTIONAL FACILITY; #2 JOHN DOE, CORRECTIONAL OFFICER, AUBURN CORRECTIONAL FACILITY; #3 JOHN DOE, CORRECTIONAL OFFICER, AUBURN CORRECTIONAL FACILITY; #4 JOHN DOE, FOOD HEALTH ADMINISTRATION SERVICE EMPLOYEE, AUBURN CORRECTIONAL FACILITY; #5 JOHN DOE, CORRECTIONAL OFFICER, AUBURN CORRECTIONAL FACILITY; #6 JOHN DOE, CORRECTIONAL OFFICER, AUBURN CORRECTIONAL FACILITY; #1 JOHN DOE, CORRECTIONAL OFFICER, AUBURN CORRECTIONAL FACILITY,

*Defendants.*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

Before:

LEVAL, LOHIER, and PARK, *Circuit Judges*.

Plaintiff-Appellant Amin Booker appeals from a decision and order of the United States District Court for the Northern District of New York (Suddaby, *J.*) granting Defendants' motion for summary judgment on Booker's claims under the Free Exercise Clause of the First Amendment and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc. Booker argues that prison officials violated his rights by interfering with his observance of Ramadan during a five-day prison lockdown and by transferring him to a special housing unit where he was unable to participate in group prayer. He also argues *pro se* that the district court erred in admitting certain hearsay and character evidence during the trial on his retaliation claim. We conclude that (1) Booker's Free Exercise claims fail because Defendants are entitled to qualified immunity; (2) Booker's RLUIPA claims are moot because he was transferred from Auburn; and (3) the district court properly admitted the contested evidence. We thus **AFFIRM**.

---

* The Clerk of Court is respectfully directed to amend the caption of this matter as above.

KAREN R. KING (Julie L. Rooney and Xinshu Sui, *on the brief*), Paul, Weiss, Rifkind, Wharton & Garrison LLP, New York, NY, *for Plaintiff-Appellant*.

BRIAN D. GINSBERG, Assistant Solicitor General (Barbara D. Underwood, Solicitor General, and Victor Paladino, Senior Assistant Solicitor General, *on the brief*), *for* Letitia James, Attorney General of the State of New York, Albany, NY, *for Defendants-Appellees.*

PARK, *Circuit Judge*:

In 2013, prison officials at the Auburn Correctional Facility in Auburn, New York implemented a five-day lockdown to conduct a facility-wide frisk in response to a recent increase in violence and weapon confiscations. During the lockdown, which occurred during the Islamic holy month of Ramadan, inmates were restricted from leaving their cells and received generic cold meals. For those observing Ramadan, the lockdown interfered with prayer meetings, ritualistic showers, and hot halal meals, which are prescribed by their religion.

Plaintiff Amin Booker is an inmate who was confined at Auburn during the lockdown in 2013. Booker is a member of the Nation of Islam, and he brought this lawsuit claiming that defendant prison officials at Auburn unconstitutionally interfered with his observance of Ramadan by failing to make available halal food,

ritualistic bathing, and group prayer meetings during the lockdown. He also contends that Defendants violated his rights by confining him to an administratively segregated Special Housing Unit ("SHU") for nearly one month, during which time he was not permitted to attend religious services.

Booker sued under the Free Exercise of Religion Clause of the First Amendment and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), and the district court (Suddaby, *J.*) entered summary judgment in favor of Defendants. Booker also brought a First Amendment retaliation claim alleging that he was placed in the SHU for filing grievances related to the lockdown. He proceeded to a jury trial on this claim and lost.

On appeal, we conclude that (1) Booker's Free Exercise claims fail because Defendants are entitled to qualified immunity; (2) Booker's RLUIPA claims for injunctive and declaratory relief are moot because he has been transferred to a different facility; and (3) the district court did not abuse its discretion in admitting certain evidence at trial relating to Booker's retaliation claim. We thus affirm.

# I.  BACKGROUND

A.   <u>Facts</u>

Plaintiff Booker is an inmate in the New York State prison system, where he is serving a life sentence for murder and other crimes.  He is a practicing member of the Nation of Islam ("NOI") and observes the Islamic holy month of Ramadan.  During Ramadan, NOI members fast from sunrise to sunset, consume a special pre-sunrise breakfast known as "Suhoor," and engage in ritualistic washing before prayer.  NOI members have dietary restrictions that differ from certain other Muslims, and they cannot eat beef, white bread, and peanut butter, among other foods.  NOI members gather for group prayer at sundown, when they also share a communal, hot meal prepared in accordance with Islamic law.

For the first three weeks of Ramadan in 2013—before the lockdown—prison officials made accommodations to allow NOI members to observe Ramadan.  NOI inmates received "Suhoor bags" for their pre-sunrise meals and hot, halal meals to eat together in the evenings.  NOI inmates also attended group prayer and bathed every day.  Corrections officers supervised NOI inmates as they ate, bathed, and prayed.

But prison officials noted an uptick in inmate violence during the month of July, and on July 29, Auburn Superintendent Harold Graham instituted the lockdown to conduct a facility-wide frisk for contraband. During the lockdown, inmates could not leave their cells except for specific, pre-approved reasons like medical testing, mental-health treatment, and previously scheduled family visits. The lockdown lasted from approximately 2pm on July 29 until 1:45pm on August 3.

During the lockdown, Booker and other NOI inmates could not leave their cells for group prayer, bathing, or communal dinners. NOI inmates were not provided Suhoor bags and evening halal meals, and instead received the same three cold meals per day as the other inmates at Auburn, much of which they could not eat without violating NOI dietary restrictions. Booker attested that he was unable to eat most of the food he was provided during the lockdown and that he ate only three or four pieces of fruit during the five-day period. Booker also claimed that he was not provided with hot water in his cell for bathing. Booker filed multiple complaints and grievances asserting that the lockdown hindered his observance of Ramadan.

On August 13, 2013, after the end of Ramadan, prison officials transferred Booker to the SHU—an administrative segregation unit used to separate certain inmates from the general population—based on his "negative impact in the operation of [the prison] facility." App'x at 580. Specifically, prison officials concluded after a hearing that Booker distributed fliers calling for a strike that urged inmates to "arm [them]selves with weapons and food and use violence and take no hostages" and stated that "if any staff member interferes with your rights, violence is to be used." App'x at 605. Booker attested, however, that prison officials told him they were transferring him to the SHU in retaliation for the grievances he filed against them related to the lockdown. Booker was in the SHU for one month, during which time he could not attend group prayer services, per standard SHU procedure. In September 2013, Booker was transferred from Auburn to a different prison facility.

B.    Procedural History

In October 2013, Booker filed suit *pro se* against various Auburn prison officials in the Northern District of New York. Booker alleged that Defendants had violated the First Amendment Free Exercise Clause and RLUIPA by interfering with his observance of Ramadan during the lockdown and preventing him from

7

attending religious services while he was in the SHU. Booker also alleged that Defendants had retaliated against him for filing grievances related to the lockdown by placing him in the SHU.

Defendants moved for summary judgment, which the district court granted as to Booker's Free Exercise and RLUIPA claims. The court adopted the report and recommendation of the magistrate judge who reasoned that (1) Booker's Free Exercise claims failed because Defendants had "demonstrated a legitimate penological purpose for the burden imposed on [Booker's] First Amendment rights," (2) Booker's RLUIPA claim relating to the lockdown failed because his transfer to another facility mooted his claim for declaratory and injunctive relief, and (3) Booker's RLUIPA claim relating to the SHU failed because prohibiting his attendance at religious services was reasonably related to security concerns. Special App'x at 17–20. Booker proceeded to trial on his retaliation claim with counsel and lost. Booker appealed *pro se*, and this Court appointed counsel.

## II.  DISCUSSION

"We review the district court's decision to grant summary judgment *de novo*, resolving all ambiguities and drawing all permissible factual inferences in favor of the party against whom summary judgment is sought." *Ya-Chen Chen v. City Univ.*

*of N.Y.*, 805 F.3d 59, 69 (2d Cir. 2015) (internal quotation marks omitted). We affirm the district court's grant of summary judgment. First, there is no clearly established obligation to accommodate prisoners' free-exercise rights during a safety-motivated lockdown or while the prisoner is in the SHU, so Defendants are entitled to qualified immunity on Booker's Free Exercise claims. Second, the district court correctly held that one of Booker's RLUIPA claims for injunctive and declaratory relief was moot because he is no longer at Auburn, and we conclude that his other RLUIPA claim is moot for the same reason.

A.    Free Exercise Claims

"Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (per curiam) (internal quotation marks omitted). While qualified immunity "does not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (per curiam) (citation omitted). "In making this determination, we consider Supreme Court and Second Circuit precedent as it existed at the time of the challenged conduct." *McGowan v. United States*, 825

9

F.3d 118, 124 (2d Cir. 2016) (per curiam). We may "grant qualified immunity on the ground that a purported right was not 'clearly established' by prior case law, without resolving the often more difficult question whether the purported right exists at all." *Id.* (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)).[1]

1. *Lockdown*

Booker argues that Defendants violated his First Amendment rights by substantially burdening his religious beliefs during the lockdown without showing that the restrictions were reasonably related to legitimate penological interests. The parties do not dispute that the lockdown impaired Booker's ability to engage in religious practices as an adherent of the Nation of Islam. The district court concluded that Defendants had asserted a "legitimate penological interest" in ensuring prison security at Auburn when they imposed the five-day lockdown to conduct a facility-wide frisk.

We need not reassess the legitimacy of Defendants' penological interest in the lockdown, the reasonableness of the lockdown restrictions, or the feasibility of

---

[1] "Although we generally decline to consider arguments that were not passed on by the district court, this principle is prudential, not jurisdictional." *McGowan*, 825 F.3d at 123. Because "[t]he issue of qualified immunity was presented in the district court, has been fully briefed on appeal, and turns on [a] purely legal question," we exercise our discretion to consider the defense of qualified immunity. *Id.* at 123–24.

alternative means by which Defendants could have accommodated Booker's observance of Ramadan.  Instead, we affirm the district court's grant of summary judgment to Defendants on the alternative basis of qualified immunity—*i.e.*, because there was no clearly established law requiring the accommodation of inmates' religious practices during a prison lockdown.

When the lockdown began on July 29, 2013, our precedent had clearly established that an inmate has a "right to a diet consistent with his or her religious scruples."  *Ford v. McGinnis*, 352 F.3d 582, 597 (2d Cir. 2003) (Sotomayor, J.).  But we have never held that a prison has an obligation to provide religiously compliant meals during a facility-wide, safety-motivated lockdown.  Nor have we held that a prison must accommodate group prayers or religious bathing rituals under such circumstances.  Indeed, Supreme Court and Second Circuit precedent make clear that "a generally applicable policy will not be held to violate a plaintiff's right to free exercise of religion if that policy 'is reasonably related to legitimate penological interests.'"  *Redd v. Wright*, 597 F.3d 532, 536 (2d Cir. 2010) (quoting *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987) (internal quotation marks omitted)).  Moreover, "[w]hen accommodation of an asserted right will have a significant 'ripple effect' on fellow inmates or on prison staff, courts should

11

be particularly deferential to the informed discretion of corrections officials." *Turner v. Safley*, 482 U.S. 78, 90 (1987). Thus, we need not rule on Booker's factual challenges to the decision below where Defendants are entitled to qualified immunity in any event because existing law did not "clearly establish" that their "conduct was unlawful." *Kisela*, 138 S. Ct. at 1152.

2.   *SHU*

For the same reason, we conclude that Booker's Free Exercise claim based on his inability to attend group prayer meetings when he was in the SHU fails because Defendants are entitled to qualified immunity. Federal law does not provide any clearly established right of an inmate confined to the SHU to attend group prayer, and New York law actually prohibits it. *See* N.Y. Comp. Codes R. & Regs. tit. 7, § 304.9(d) (2020) ("Attendance at congregate religious services will not be permitted" while in the SHU.). There was no binding precedent—when Booker was placed in the SHU or since—clearly establishing that an inmate in the SHU must be allowed to attend group prayer. Indeed, we have previously upheld this same restriction on participation in congregate services when the inmate is a security risk. *See, e.g., Salahuddin v. Jones*, 992 F.2d 447, 449 (2d Cir. 1993) (per curiam) ("Given that appellant posed a threat to the safety of other prisoners and

12

that the state forbade only congregate religious services and not his solitary practice of religion, the state's purpose was legitimate."). Defendants were thus entitled to qualified immunity, and we affirm the district court's grant of summary judgment on Booker's Free Exercise claims.

B. RLUIPA Claims

Booker's RLUIPA claims are moot because he was transferred out of Auburn. RLUIPA provides only for injunctive and declaratory relief when a prison violates an inmate's religious rights. *See Washington v. Gonyea*, 731 F.3d 143, 144 (2d Cir. 2013) (per curiam) ("RLUIPA does not authorize monetary damages against state officers in their official capacities . . . and does not create a private right of action against state officers in their individual capacities."). "In this circuit, an inmate's transfer from a prison facility generally moots claims for declaratory and injunctive relief against officials of that facility." *Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2006). Booker argues that he may "return to Auburn during the term of his incarceration," Pl.'s Br. at 26, but "[s]uch speculation warrants no departure from the principle" that an inmate may not seek injunctive relief against prison officials after transfer. *Shepherd v. Goord*, 662 F.3d 603, 610 (2d Cir. 2011). Moreover, Booker acknowledges that he is not challenging the general policy

13

prohibiting inmates in the SHU from attending congregate prayer, *see* N.Y. Comp. Codes R. & Regs. tit. 7, § 304.9(d), but instead "whether the Defendants applied that policy to Mr. Booker in a manner compliant with . . . RLUIPA." Pl.'s Reply Br. at 16. Any relief would thus have little applicability outside of Auburn, or even outside of the particular circumstances Booker faced.

C.      Evidentiary Claims

Finally, Booker argues in a supplemental *pro se* brief that he is entitled to a new trial on his retaliation claim because the district court improperly admitted hearsay evidence that he was a member of a gang and character evidence in the form of his disciplinary and criminal history. The district court did not abuse its discretion in admitting this evidence. *See Cameron v. City of New York*, 598 F.3d 50, 61 (2d Cir. 2010) ("We review a district court's evidentiary rulings for abuse of discretion, and will reverse only for manifest error." (internal quotation marks omitted)). The district court properly reasoned that the statements about Booker's gang affiliation were not admitted for their truth, but as evidence that the Defendants acted with lawful and appropriate motivation. *See* Fed. R. Evid. 801(c)(2). For the same reason, the district court properly admitted Booker's criminal and disciplinary history. *See* Fed. R. Evid. 404(a)(1), (b)(1).

14

## III. CONCLUSION

For the reasons set forth above, we affirm the judgment of the district court.