22-741
*Wexler v. Hasbro, Inc.*

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of The United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 18th day of May, two thousand twenty-three.

PRESENT:
> JOHN M. WALKER, JR.,
> RICHARD C. WESLEY,
> BETH ROBINSON,
> > *Circuit Judges*.

---

DAVID WEXLER,

> *Plaintiff-Appellant*,

> v.                                                                 No. 22-741

HASBRO, INC.,

> *Defendant-Appellee*.

---

FOR APPELLANT:                    PHILIPPE A. ZIMMERMAN, Moses &
                                  Singer LLP, New York, NY.

FOR APPELLEE:                                  COURTNEY L. BATLINER (Joshua C. Krumholz, *on the brief*), Holland & Knight LLP, Boston, MA.

Appeal from a judgment of the United States District Court for the Southern District of New York (Caproni, *J.*).

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment appealed from, entered on March 11, 2022 is **AFFIRMED**.

Plaintiff-Appellant David Wexler appeals from the district court's order granting Defendant-Appellee Hasbro, Inc.'s motion for summary judgment. Wexler filed suit against Hasbro in early 2020, alleging that it used his idea for a branded line of game "mash-ups" without compensating him and asserting causes of action under New York state law for breach of contract, misappropriation, unfair competition, and unjust enrichment. Hasbro moved for summary judgment, asserting that it independently developed its game mash-up line, and that in any event, Wexler's idea was not sufficiently novel to warrant legal protection. The district court concluded that there was no dispute of material fact that Wexler's idea was not novel and dismissed his claims.

On appeal, Wexler argues that the undisputed facts establish a factual issue as to whether his idea was novel. We assume the parties' familiarity with the

2

underlying facts, procedural history, and arguments on appeal, to which we refer only as necessary to explain our decision to affirm.

Hasbro, per industry custom, routinely meets with outside inventors to hear pitches for new game and toy ideas. Wexler, an inventor, met with Hasbro's inventor relations department several times between 2007 and 2015 and pitched his idea for a branded line of mash-ups of classic Hasbro games. Wexler's idea for game mash-ups would contain the name of each game in the title, and combine the rules of the existing games into a new play pattern to create a new gaming experience while capitalizing on customers' nostalgia for the pre-existing titles. Wexler specifically suggested mash-ups including "Connect 4 Scrabble," "Guess Who? Memory," and "Jenga Twister," but also asserted that his idea was for the branded line of mash-ups in general, and not for any one mash-up in particular. Joint App'x 547. At the first meeting, Hasbro marked Wexler's idea "Hold/Send-In," meaning that it was brought to others within Hasbro for further consideration, but ultimately Hasbro passed on the idea. Wexler did not have any success during his future pitches of the same or similar ideas.

In 2019, Hasbro, in exclusive collaboration with Target, released a line of branded "game mash+ups," including "Monopoly + Jenga," "Twister Scrabble," and "Guess Who? + Clue." Joint App'x 1403. Like Wexler's idea, each game

3

combined the play patterns of two classic Hasbro games to create a new gaming experience. None of Wexler's specifically suggested mash-up games were used by Hasbro in the Target line. When Wexler learned of the Target line, he demanded that Hasbro pay him royalties for the use of his idea. Hasbro refused, stating that it had independently developed the idea, and Wexler filed suit.

During the summary judgment briefing, both parties offered expert testimony. Hasbro's expert Philip Orbanes opined that the idea for a line of game mash-ups was not novel because there are long-standing practices within the toy and game industry of marketing cohesive collections (such as Target's "Rustic" and "Retro" lines of Hasbro games), combining existing games to create a new game (*Cranium*), and combining two existing properties in a new product (*Girl Talk Jenga*, "Mixable Mashable Heroes"—a line of Mr. Potato Head dolls inspired by Marvel characters). Orbanes further noted that mashing up existing games to come up with new ones is ubiquitous in the industry and among game design fans, pointing to online discussions, online articles, and the game design book *New Rules for Classic Games*, which contains a section entitled "Combining Games" that describes "how to create new game experiences by combining classic games in general." Joint App'x 73.

Wexler's expert Ronald Weingartner opined that Wexler's idea was novel, pointing to Hasbro's internal communications describing excitement for the Target line, the fact the idea was initially marked "Hold/Send In," and the fact a mash-up line of classic games had never been created before.

Applying the factors identified by this court in *Nadel v. Play-by-Play Toys and Novelties*, the district court agreed with Hasbro that Wexler's idea was not novel—a conclusion that doomed each of Wexler's claims. *Wexler v. Hasbro, Inc.*, No. 20-CV-1100 (VEC), 2022 WL 743431, at *6-9 (S.D.N.Y. March 11, 2022) (citing 208 F.3d 368, 378 (2d Cir. 2000)).[1] Wexler timely appealed.

We review a district court's decision granting summary judgment without deference, "resolving all ambiguities and drawing all permissible factual inferences in favor of the party against whom summary judgment is sought"— here, Wexler. *Booker v. Graham*, 974 F.3d 101, 106 (2d Cir. 2020).[2]

---

[1] The district court separately dismissed Wexler's unjust enrichment claim as duplicative of his other claims. *Wexler v. Hasbro, Inc.*, No. 20-CV-1100 (VEC), 2022 WL 743431, at *4 n.18 (S.D.N.Y. March 11, 2022) (citing *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790 (2012)). Additionally, having concluded that Wexler's idea was not novel, the district court did not reach the issue of whether Hasbro had actually used the idea. *Id.* at *5 n.19. Likewise, we do not reach the issue of whether Hasbro used Wexler's idea because we agree that the idea is not novel as a matter of law.

[2] In quotations from caselaw and the parties' briefing, this summary order omits all internal quotation marks, alterations, footnotes, and citations, unless otherwise noted.

Under New York law, a plaintiff must prove that an idea is novel to establish the kind of proprietary interest that could support a misappropriation claim, and to show valid consideration to support a contract claim. *Apfel v. Prudential-Bache Secs. Inc.*, 81 N.Y.2d 470, 477 (1993); *see also Nadel*, 208 F.3d at 375. The tort of unfair competition based on the alleged misappropriation of ideas likewise requires a showing of novelty, *see Paul v. Haley*, 183 A.D.2d 44, 52-53 (2d Dep't 1992); *Nadel*, 208 F.3d at 373 n.2, as does a claim for unjust enrichment, *see Downey v. General Foods Corp.*, 31 N.Y.2d 56, 61 (1972) ("Lack of novelty in an idea is fatal to any cause of action for its unlawful use."). Therefore, none of Wexler's claims survive summary judgment if he cannot show a triable issue as to his idea's novelty.

Additionally, this court has previously held that under New York law, a misappropriation claim requires a showing that the idea is novel generally, while a contract-based claim only requires a showing that the idea was novel to the buyer. *Nadel*, 208 F.3d at 376. This allows for the possibility that even when "an idea [is] unoriginal or non-novel in a general sense, it may have substantial value to a particular buyer who is unaware of it and therefore willing to enter into contract to acquire and exploit it." *Id.* at 377. At the same time, the *Nadel* court acknowledged that "an idea may be so unoriginal or lacking in novelty that its obviousness bespeaks widespread and public knowledge of the idea, and such

knowledge is therefore imputed to the buyer.  In such cases, a court may conclude, as a matter of law, that the idea lacks both the originality necessary to support a misappropriation claim and the novelty to the buyer necessary to support a contract claim."  *Id.* at 378-79.[3]

The *Nadel* court identified several factors to consider in determining whether an idea is novel, including "the idea's specificity or generality (is it a generic concept or one of specific application?), its commonality (how many people know of this idea?), its uniqueness (how different is this idea from generally known ideas?), and its commercial availability (how widespread is the idea's use in the industry?)."  *Id.* at 378.  Moreover, "even though an idea need not reflect the flash of genius to warrant protection, it must show genuine novelty and invention, and not a merely clever or useful adaptation of existing knowledge."  *Paul*, 183 A.D.2d at 53.  "Improvement of standard technique or quality, the judicious use of existing means, or the mixture of known ingredients in somewhat different proportions—all the variations on a basic theme—partake more of the

---

[3] Lower New York courts—but not the New York Court of Appeals—have disagreed with this interpretation of New York law with respect to implied-in-fact contract claims.  *See, e.g.*, *Am. Bus. Training Inc. v. Am. Mgmt. Ass'n*, 50 A.D.3d 219, 223 (1st Dep't 2008); *Lapine v. Seinfeld*, 31 Misc.3d 736, 745 (Sup. Ct. N.Y. Cnty. 2011) ("*Nadel* is not persuasive authority that the novelty to the buyer standard applies to a breach of implied contract claim based on the use of ideas.").  Because the outcome in this case would be the same under either a general novelty or novelty-to-the-buyer standard, this case does not give us cause to consider whether *Nadel* misinterpreted New York law.

nature of elaboration and renovation than of innovation."  *Id.*; *see also Murray v. Nat'l Broad. Co., Inc.*, 844 F.2d 988, 993 (2d Cir. 1988) (acknowledging that while novel ideas may "combine elements that are themselves not novel," when "an idea consists . . . of nothing more than a variation on a basic theme," a finding of novelty is not supported), *abrogated on other grounds by Nadel*, 208 F.3d at 375-76.

For example, in *Murray*, this court concluded that although *The Cosby Show* featuring Black actors cast in non-stereotypical roles was a "breakthrough" television sitcom, "the need for a more positive, fair and realistic portrayal" of a Black family on television had been "recognized for many years," and the idea of casting Black actors in a sitcom was "nothing more than a variation on a basic theme" rather than novel.  *Murray*, 844 F.2d at 992-93; *see also Downey*, 31 N.Y.2d at 59, 61-62 (the idea of using the name "Mr. Wiggle" in a Jell-O advertising campaign aimed toward children was not novel when previous Jell-O advertising campaigns had used the word "wiggle," and the word was "descriptive of the most obvious characteristic of Jell-O"); *Am. Bus. Training*, 50 A.D.3d at 223-24  (an idea for a seminar billed as the "5-Day MBA" was not novel when evidence showed that other seminar companies marketed short-term "MBA essentials" courses); *cf. Nadel*, 208 F.3d at 380-81 (though similar toys were commercially available, evidence was not sufficient to conclude that the idea of a "plush toy that

8

sits upright, emits sounds, and spins on a flat surface by means of an internal eccentric motor" was, as a matter of law, not novel).

Wexler describes his idea as "[a] collection of more than one product, which products would be sold, marketed, advertised and offered for sale under a common collection name. Each product in the collection would be comprised of a combination of two Hasbro classic games or toys . . . that utilized elements of game play from two existing Hasbro Classics. The new product would provide a novel gaming experience for consumers that drew on consumer nostalgia for the underlying Hasbro Classics." Joint App'x 547. Additionally, "[t]he name of each of the specific products in the collection would be the names of the two Hasbro Classics that were being combined," and the collection's name would include the word "Mash-ups." *Id.* Viewing the facts in the light most favorable to Wexler, we agree with the district court that this idea is not novel as a matter of law, either generally or to Hasbro.

In light of the evidence documenting the existence of combination games and toys in the industry, a long-standing game design practice of combining games and releases of existing Hasbro games in cohesive collections, Wexler's idea can only be understood as a combination of known elements into a new or useful idea, or "a variation on a basic theme," which is not novel under the governing

9

legal standards. *Murray*, 844 F.2d at 993. Applying the *Nadel* factors, Wexler's idea for a branded game mash-ups line is a generic concept, known by many people within the toy and gaming industry as well as the game-buying public, not sufficiently distinct from generally known ideas for combination games and branded lines, and widespread in the industry—as the existence of games like *Cranium* and *Girl Talk Jenga* make clear. The fact that the precise combination of elements Wexler suggested had never been used before does not make the idea novel.

* * *

Because Wexler did not present evidence creating a factual issue as to whether his idea was novel, each of his claims fail. Accordingly, the district court's judgment granting Hasbro's motion for summary judgment and dismissing Wexler's claims is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court